RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0320p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

            *Plaintiff-Appellee,*

    *v.*

ANTONIO WYNN,

             *Defendant-Appellant.*

No. 07-4307

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-00054—Donald C. Nugent, District Judge.

Argued: June 16, 2009

Decided and Filed: September 2, 2009

Before: MOORE, GIBBONS, and FRIEDMAN, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:** Jonathan Witmer-Rich, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Gregory C. Sasse, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jonathan Witmer-Rich, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Gregory C. Sasse, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

    MOORE, J., delivered the opinion of the court, in which GIBBONS, J., joined. FRIEDMAN, J. (pp. 16-21), delivered a separate opinion dissenting in part.

_____

[*]The Honorable Daniel M. Friedman, Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Antonio Wynn ("Wynn") appeals his 235-month sentence resulting from a guilty plea, pursuant to a written plea agreement, to one count of possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B). Wynn's sole argument on appeal is that, in light of the Supreme Court's recent decision in *Begay v. United States*, --- U.S. ----, 128 S. Ct. 1581 (2008), the district court erred in concluding that Wynn's guilty plea to "sexual battery" under Ohio Rev. Code § 2907.03 was a "crime of violence" for purposes of determining that Wynn was a career offender. For the reasons discussed below, we **VACATE** Wynn's sentence and **REMAND** to the district court for the limited purpose of resentencing Wynn after determining whether Wynn qualifies as a career offender in light of *Begay*.

## I. FACTS AND PROCEDURE

The underlying facts of this case are not in dispute. On December 30, 2006, Cleveland police officers stopped Wynn's car for speeding and changing lanes without signaling. During the stop, police noticed a plastic bag containing a white substance, later identified as crack cocaine, in plain view. Wynn was arrested, and the police discovered more crack cocaine upon a search of the car. All told, Wynn possessed 44.7 grams of crack cocaine at the time of his arrest.

Wynn was indicted and, pursuant to a written plea agreement, Wynn pleaded guilty to one count of possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B), on August 1, 2007. Prior to pleading guilty, Wynn consented to a pre-plea Presentence Investigation Report ("PSR"), which was prepared and updated prior to the sentencing hearing.

The updated PSR calculated Wynn's adjusted offense level to be 30, and then applied the career-offender enhancement under the U.S. SENTENCING GUIDELINES

MANUAL ("U.S.S.G.") § 4B1.1 for a total offense level of 37. The PSR based the § 4B1.1 enhancement on two prior convictions: (1) "Assault on [a] Peace Officer" and (2) a plea of guilty to "Sexual Battery" in violation of Ohio Rev. Code § 2907.03. PSR ¶ 19. The PSR described the latter offense as follows:

> According to an August 2001 Cuyahoga County Adult Probation Department presentence report, the following is known: On October 21, 2000, at 4:00 a.m. the defendant, his friend, and his friend's girlfriend went to the home of the girlfriend's 16-year-old female cousin, after a night of drinking. The juvenile girl went upstairs to lay down, and the defendant followed her into her bedroom. After a brief conversation, the defendant started rubbing the girl's leg, but she told him to stop. He initially stopped, however, he began touching her again as she tried to leave the room. The defendant forced the girl onto her bed and removed her clothes. The girl screamed, and the defendant placed his hand over her mouth. She told the defendant that she could not breath[e], and he removed his hand. The defendant then opened the girl's legs and inserted his penis into her vagina. After the defendant finished moving, the girl got up and told her cousin what happened.

PSR ¶ 34. The PSR assigned Wynn a criminal history category of VI, which, coupled with a total offense level of 37, resulted in an advisory guidelines range of 360 months to life imprisonment. Wynn's counsel filed a sentencing memorandum that argued for a downward variance from the guidelines range, but did not object to any factual assertions in the PSR or to the finding that Wynn was a career offender.

After reviewing the PSR, the district court determined that the correctly calculated total offense level was 37; however, the court awarded a three-point reduction for acceptance of responsibility for a total offense level of 34, reducing the guidelines range to 262 to 327 months of imprisonment. The district court further noted that Wynn was a career offender but that "because of [Wynn's] forthrightness, [and Wynn's] willingness to help," it would treat Wynn's final total offense level as a 33, with a criminal history category of VI. Record ("R.") at 29 (09/18/07 Sent. Hr'g Tr. at 11). This produced a guidelines range of 235 to 293 months. The district court sentenced Wynn to 235 months of imprisonment. Wynn timely appealed this sentence.

## II.  ANALYSIS

Wynn's sole contention on appeal is that, in light of *Begay v. United States*, ---
U.S. ----, 128 S. Ct. 1581 (2008), the district court erred in imposing the U.S.S.G.
§ 4B1.1(a) career-offender enhancement to his sentence because his conviction under
Ohio Rev. Code § 2907.03 is not a "crime of violence" under the *Begay* test.  Wynn
asserts that, without this enhancement, his total offense level would have been 27, with
a criminal history category of VI, for a guidelines range of 130 to 162 months.[1]  As
explained below, we conclude that we must vacate Wynn's sentence in light of *Begay*.

### A.  Standard of Review

After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220
(2005), we review sentences "for reasonableness—including for procedural error in the
calculation of the guideline range such as defendant asserts in this case."  *United States
v. Bartee*, 529 F.3d 357, 358 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38,
128 S. Ct. 586, 596 (2007)).  Thus, when reviewing a district court's sentencing
determination, we must "ensure that the district court committed no significant
procedural error, such as failing to calculate (or improperly calculating) the Guidelines
range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors,
selecting a sentence based on clearly erroneous facts, or failing to adequately explain the
chosen sentence."  *Gall*, 128 S. Ct. at 597.  We review de novo the district court's
determination that a prior conviction is a "crime of violence" under U.S.S.G. § 4B1.1.
*United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005).

### B.  Career-Offender Status

"A defendant is a career offender if (1) the defendant was at least eighteen years
old at the time the defendant committed the instant offense of conviction; (2) the instant

---

[1]Wynn further notes that under the current version of the U.S.S.G., his guidelines range would
be 110 to 137 months.  Wynn Br. at 4.  However, Wynn does not account for the ten-year mandatory-
minimum sentence applicable to his conviction.  *See* PSR ¶ 60; Record on Appeal ("ROA") at 26 (Plea
Agreement at 2).  This statutory minimum is based on Wynn's prior conviction for a drug offense.  ROA
at 21-22 (Information Regarding Prior Conviction).

offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Wynn does not contest the fact that requirements one and two are met; rather, Wynn asserts that he does not have the two predicate "crime of violence" convictions necessary to be a career offender because, in light of the Supreme Court's decision in *Begay*, his conviction under Ohio Rev. Code § 2907.03 is not a "crime of violence."

A prior conviction constitutes a "crime of violence" if the crime was "punishable by imprisonment for a term exceeding one year," and

> (1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

U.S.S.G. § 4B1.2(a) (emphasis added).

To determine whether a prior conviction constitutes a "crime of violence," we must apply the categorical approach expressed in *Taylor v. United States*, 495 U.S. 575 (1990), and expanded to convictions based on guilty pleas in *Shepard v. United States*, 544 U.S. 13 (2005).[2]  *See, e.g.*, *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995); *Bartee*, 529 F.3d at 359. "Under this categorical approach, the court must look only to *the fact of conviction* and the statutory definition—not the facts underlying the offense—to determine whether that definition supports a conclusion that the conviction was for a crime of violence."[3]  *Bartee*, 529 F.3d at 359 (emphasis added) (citing *United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006)); *see also Taylor*, 495 U.S. at 602 (holding that a court is required to "look only to *the fact of conviction* and the statutory

---

[2]Although *Taylor*, *Shepard*, and *Begay* all involved the definition of "violent felony" under the Armed Career Criminal Act, we have repeatedly applied the analysis espoused in these opinions "to the parallel determination of whether a prior conviction constitutes a 'crime of violence' under USSG § 4B1.2(a)." *Bartee*, 529 F.3d at 359.

[3]The government misquotes this phrase in its brief. Gov't Br. at 12 ("The categorical approach established in *Taylor* requires that a court look to the '*facts* of conviction' and to the 'statutory definition' of the offense when analyzing the 'crime of violence' question." (emphasis added)).

definition of the prior offense" when determining if a prior conviction constitutes a "violent felony" under the Armed Career Criminal Act (emphasis added)); *Begay*, 128 S. Ct. at 1584 ("[W]e consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."). There is, however, an exception to the categorical approach: "[W]hen the statutory definition [of the prior crime to which the defendant pleaded guilty] is ambiguous . . . the court may examine . . . 'the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.'" *Bartee*, 529 F.3d at 359 (quoting *Shepard*, 544 U.S. at 26).

Given this framework and the facts in the record, we must answer two questions to resolve the instant appeal. First, is a generic conviction under Ohio Rev. Code § 2907.03 categorically a "crime of violence"? Because we conclude that the answer to this question is "no," we must next determine whether the district court could nevertheless conclude that Wynn's conviction under § 2907.03 constitutes a "crime of violence" by using the factual recitation of the crime provided in the PSR. Because we also conclude that the answer to this question is "no," we must vacate Wynn's sentence.

### 1. Is a Generic Conviction under Ohio Rev. Code § 2907.03 Categorically a "Crime of Violence"?

At the time of Wynn's conviction, Ohio Rev. Code § 2907.03 criminalized the following activity:

(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

    (1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.

    (2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

(3)     The offender knows that the other person submits because the other person is unaware that the act is being committed.

(4)     The offender knows that the other person submits because the other person mistakenly identifies the offender as the other person's spouse.

(5)     The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

(6)     The other person is in custody of law or a patient in a hospital or other institution, and the offender has supervisory or disciplinary authority over the other person.

(7)     The offender is a teacher, administrator, coach, or other person in authority employed by or serving in a school for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code, the other person is enrolled in or attends that school, and the offender is not enrolled in and does not attend that school.

(8)     The other person is a minor, the offender is a teacher, administrator, coach, or other person in authority employed by or serving in an institution of higher education, and the other person is enrolled in or attends that institution.

(9)     The other person is a minor, and the offender is the other person's athletic or other type of coach, is the other person's instructor, is the leader of a scouting troop of which the other person is a member, or is a person with temporary or occasional disciplinary control over the other person.

Ohio Rev. Code § 2907.03(A) (2001). There is no indication in the record as to the subsection of § 2907.03(A) to which Wynn pleaded guilty. Thus, we must initially review § 2907.03(A) in its entirety to determine if, categorically, generic convictions under § 2907.03(A) are "crimes of violence."

We have previously noted that, "[a]s statutorily defined, sexual battery [under § 2907.03] simply does not require the use, attempted use, or threatened use of force.

Rather, the crime is complete upon using any coercive means to induce the victim to engage in sexual conduct with the perpetrator." *United States v. Mack*, 8 F.3d 1109, 1112 (6th Cir. 1993) ("*Mack I*"), *vacated and superseded on rehearing on other grounds by United States v. Mack*, 53 F.3d 126 (6th Cir. 1995) ("*Mack II*"). Moreover, "sexual battery" is not one of the enumerated crimes listed in U.S.S.G. § 4B1.2(a); thus, we can conclude that "sexual battery" is a "crime of violence" only if we determine that "sexual battery" is encompassed by the "otherwise involves conduct that presents a serious potential risk of physical injury to another" clause of § 4B1.2(a)(2) (hereafter referred to as the "otherwise" clause). U.S.S.G. § 4B1.2(a)(2).

We held just that in *Mack II*. Relying on our opinion in *United States v. Kaplansky*, 42 F.3d 320 (6th Cir. 1994) (en banc), the *Mack II* panel concluded that "sexual battery as defined in Ohio Rev. Code § 2907.03 categorically qualifies as a 'violent felony' under" the "otherwise" clause of the ACCA—a determination parallel to the determination whether a conviction is a "crime of violence"—because § 2907.03 carries with it "a serious 'potential' for violence." *Mack II*, 53 F.3d at 128.[4]

The law has changed since *Mack II*, however. In *Begay*, the Supreme Court considered whether a New Mexico driving-under-the-influence ("DUI") statute was encompassed by the "otherwise" clause of the ACCA and was thus a "violent felony." *Begay*, 128 S. Ct. at 1584. In rejecting such a characterization, the Court assumed that DUI carries "a serious potential risk of physical injury to another," but concluded that such a fact was not enough to categorize the crime as a "violent felony" under the "otherwise" clause. *Id.* at 1584-86. Rather, as we have previously explained, the Supreme Court determined that a crime is encompassed by the "otherwise" clause if it is "similar *in both kind and in degree of risk* to the enumerated examples—burglary of a dwelling, arson, extortion, or crimes involving the use of explosives." *Bartee*, 529

---

[4]There is some authority in this circuit that suggests that *Mack II*'s holding was limited to § 2907.03(A)(3) and (4). *Hargrove*, 416 F.3d at 495. *Hargrove*, however, contains no analysis regarding how it determined that *Mack II* is so limited. *Id.* Indeed, such a holding seems contrary to *Mack II*'s blanket declaration that "sexual battery as defined in Ohio Rev. Code § 2907.03 categorically qualifies as a 'violent felony' under" the "otherwise" clause. *Mack II*, 53 F.3d at 128. Because we conclude that a generic conviction under § 2907.03 is not categorically a "crime of violence," the propriety of *Hargrove*'s distinction is not significant.

F.3d at 363.  The *Begay* Court stressed that "burglary, arson, extortion, and crimes involving the use of explosives[—t]he listed crimes[—]all typically involve purposeful, 'violent,' and 'aggressive' conduct," a trait that the DUI statute in question did not share. *Begay*, 128 S. Ct. at 1586.  Thus, to be alike in kind to the enumerated offenses, a crime must be "alike in the 'purposeful, violent, and aggressive' nature of the conduct." *Mosley v. United States*, --- F.3d ---, 2009 WL 2176634, at *2 (6th Cir. 2009) (quoting *Begay*, 128 S. Ct. at 1586).

In light of *Begay*, our decision in *Mack II* is no longer good law.  The *Mack II* panel did not consider whether the crimes included in § 2907.03 were similar both in kind (i.e., whether § 2907.03 crimes involve purposeful, violent, and aggressive conduct) and in degree of risk to the enumerated crimes of burglary, arson, extortion, or crimes involving explosives.  After *Begay*, these inquiries must be performed when determining whether an offense is categorically a "crime of violence" under the "otherwise" clause. *See Mosley*, 2009 WL 2176634, at *2.

Furthermore, applying the *Begay* test, we conclude that a generic conviction under § 2907.03 is not categorically a "crime of violence" because some subsections of § 2907.03 can result in convictions for crimes that, while involving purposeful behavior, do not involve aggressive and violent behavior.  For example, § 2907.03(A)(5) criminalizes a consensual sexual encounter between a woman and her 21-year-old adopted stepson.  *See State v. Lowe*, 861 N.E.2d 512, 515 (Ohio 2007) ("Courts examining R.C. 2907.03(A)(5) have found the statute clear and unambiguous in its criminalization of all sexual conduct falling within its purview, regardless of a victim's age or consent.").  Such a consensual sexual act between adults would not be violent and aggressive by nature, and thus would not be a "crime of violence" under the *Begay* test.

Initially, in its brief, the government conceded this point.  Gov't Br. at 14 (noting that when one applies the narrow *Begay* test to § 2907.03 as a whole, one easily concludes that "some permutations of the Ohio crime of sexual battery, by definition, are not categorically violent crimes").  At oral argument, however, the government attempted to revoke this concession and assert a new argument focused on the definition

of "forcible sex offenses" located in the commentary to U.S.S.G. § 2L1.2, the guidelines provision pertaining to unlawful entry to the United States. The panel requested that the government file a letter brief on the issue and that Wynn respond. After considering these letter briefs, we are not persuaded by the government's new argument.

In its letter brief, the government observes that the commentary notes to § 2L1.2 and to § 4B1.2, which enumerate various per se "crimes of violence" applicable to the term as used in each subsection, both list "forcible sex offenses" as "crimes of violence." Essentially, the government contends that these "forcible sex offenses" terms are "analogous" and should be interpreted to encompass the same crimes. Gov't Letter Br. at 1. Moreover, the government asserts that § 2L1.2's commentary "was amended in November 2008 to define 'forcible sex offenses' as 'including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced,'" and that "all convictions under . . . § 2907.03 (as it existed in 2001 when Wynn was convicted under it) categorically fall within th[is] definition of 'forcible sex offenses.'" *Id.* Because we disagree with the government's initial premise, that "forcible sex offenses" under § 2L1.2 and § 4B1.2 should be read to cover the same offenses, we reject the government's argument.

The commentary notes of both §§ 2L1.2 and 4B1.2 enumerate various offenses that are per se "crimes of violence." *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (2008); U.S.S.G. § 4B1.2 cmt. n.1 (2008). Prior to the November 2008 amendment, both such sections included "forcible sex offenses" as an enumerated offense, without further elaboration. *See id.* However, the 2008 amendment added language to the "forcible sex offenses" term of § 2L1.2: "forcible sex offenses (*including* where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced)." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (2008) (emphasis added). According to the Sentencing Commission, the purpose of this amendment is to "clarif[y] the scope of the term 'forcible sex offense' *as that term is used* in the definition of 'crime of violence' *in § 2L1.2*." U.S.S.G. § 2L1.2 app. C, amend. 722 (2008) (emphases added).

Section 4B1.2's commentary did not receive such an amendment, even though it was within the Sentencing Commission's discretion so to amend that section. *See* U.S.S.G. § 4B1.2 cmt. n.1 (2008). By arguing that we should apply § 2L1.2's additional language to § 4B1.2, the government asks us to treat § 4B1.2 as if it also were amended. Given the fact that the Sentencing Commission failed to amend § 4B1.2 and that the Commission specifically stated that the purpose of the 2008 amendment was to clarify the scope of "forcible sex offenses" under § 2L1.2, the logical conclusion that we must draw is that the Sentencing Commission did not intend for "forcible sex offenses" under § 4B1.2 to be defined the same way as "forcible sex offenses" under § 2L1.2. We will not accept the government's invitation to overrule this decision.

Moreover, such differential treatment regarding the scope of "forcible sex offenses" between the two sections is consistent with other differences in the sections. Even before the 2008 amendment, § 2L1.2's commentary included both "statutory rape" and "sexual abuse of a minor" in its list of enumerated "crimes of violence," while § 4B1.2 did not specifically list those crimes. *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (2007); U.S.S.G. § 4B1.2 cmt. n.1 (2007). Thus, § 2L1.2's definition of "crime of violence" has always expressly covered more sex crimes than § 4B1.2's definition, and there is nothing irrational about the Sentencing Commission's decision to continue that approach with the 2008 amendment adding language to § 2L1.2 alone. We therefore reject the government's argument and conclude that a generic conviction under Ohio Rev. Code § 2907.03 does not qualify categorically as a "crime of violence" under § 4B1.2.[5]

### 2. Could the District Court Conclude that Wynn's Conviction Under Ohio Rev. Code § 2907.03 Constituted a "Crime of Violence" by Using the Factual Recitation in the PSR?

Even though we have determined that we cannot say categorically that a conviction under Ohio Rev. Code § 2907.03 is a "crime of violence," this does not end our inquiry. The government also asserts that, if convictions under § 2907.03(A) are not

---

[5]We express no opinion regarding whether any individual subsection of § 2907.03 categorically constitutes a "crime of violence" under § 4B1.2.

categorically "crimes of violence," the statute is at least ambiguous and, applying the *Taylor*/*Shepard* exception, the district court was permitted to look to the underlying facts of the prior conviction, as detailed in the PSR (the only evidence in the record regarding the prior conviction), to ascertain that Wynn was convicted under § 2907.03(A)(1), which the government contends is categorically a "crime of violence." Wynn counters that factual recitations in a PSR "do not fall under *Taylor*'s 'narrow exception,' and that the government's attempt to use [the PSR] invites the very harm that *Taylor* sought to prevent: re-litigation in the present judicial proceeding of the facts underlying the defendant's prior conviction." Wynn Reply Br. at 3. We find Wynn's argument persuasive.

The government's argument is dependent on whether the factual recitation in a PSR constitutes a "comparable judicial record" under *Shepard* that a district court can consider in determining if a defendant's prior conviction is a "crime of violence." A panel of this court has previously held, in a published opinion, that a district court's use of the factual description of a prior conviction contained in a PSR to determine if the prior conviction is a "crime of violence" does "not adhere to the dictates of *Taylor* and *Shepard*." *Bartee*, 529 F.3d at 361. In *Bartee*, according to the amended information, the defendant pleaded guilty to "sexual contact with another person, to-wit: Angela . . . during the commission of another felony, to-wit: solicit[ing] minor for immoral purposes." *Id*. at 360 (alterations in original). The *Bartee* panel concluded that, in order to determine that this conviction was for a "crime of violence" under the "otherwise" clause, one necessarily had to consider the factual allegations contained in the PSR, which explicitly noted that "Angela" was a minor when the defendant engaged in sexual contact with her. *Id*. at 361. The *Bartee* panel noted that "the Court [in *Shepard*] specifically rejected the government's call to permit consideration of police reports and criminal complaint applications to support a finding that the guilty plea could only have been based on facts that would qualify the conviction as a 'violent felony.'" *Id*. at 359-60 (citing *Shepard*, 544 U.S. at 21). In vacating the defendant's sentence, the panel concluded that the factual descriptions contained in a PSR are "the sort of information

that one might expect to find in a police report or application for criminal complaint." *Bartee*, 529 F.3d at 361.**6**

We are bound by *Bartee*. *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001) ("[A] panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." (internal quotation marks omitted)). Applying *Bartee*, we conclude that it would be improper for the district court to rely on the factual recitations in the PSR to determine that Wynn's § 2907.03 conviction was for a "crime of violence."

The government attempts to minimize *Bartee*'s application to the current case by contending that "[n]owhere in *Bartee* does it indicate whether the defendant objected to the factual recitation in the Presentence Report." Gov't Br. at 15. *Bartee* suggests in a footnote the possibility that the defendant did not object to the PSR. *Bartee*, 529 F.3d at 361 n.4 ("Nor can we conclude that the error was harmless simply because *the defendant never denied* that the prior conviction involved sexual contact with a minor." (emphasis added)). Further, even if the defendant in *Bartee* had objected to the factual recitations of the PSR, the *Bartee* panel did not base its conclusion regarding the PSR on such a fact. Instead, the *Bartee* panel compared the factual recitations in a PSR generally to the information contained in a police report or like materials, concluding that the PSR contained "the sort of information that one might expect to find in a police report or application for criminal complaint." *Id*. at 361. Moreover, such a holding, declaring PSRs to be non-*Shepard* documents, is consistent with *Shepard*'s decree that *Taylor* "require[s] that evidence of [a] generic conviction be confined to records of the convicting court," *Shepard*, 544 U.S. at 23, because a PSR prepared for a federal-district-court sentencing can never be a record of a convicting state court.

---

**6**Additionally, in *United States v. Johnson*, 308 F. App'x 968 (6th Cir. 2009), when considering whether a conviction under Tenn. Code Ann. § 39-13-103 is a "crime of violence" under the "otherwise" clause, the panel praised the district court's treatment of the PSR: "Although the presentence report, which is the only evidence in the record concerning this conviction, recounts the factual basis for the conviction, the district court *properly* focused on the statutory definition in concluding that the offense otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id*. at 975 (emphasis added) (internal quotation marks omitted).

At oral argument, the government raised a new argument and contended that everything said in *Bartee* regarding the use of a PSR as a *Shepard* document is dicta because, in *Bartee*, the government did not assert that a PSR was a *Shepard* document. Any failure of the government to raise a *Shepard* argument in *Bartee* does not render *Bartee*'s PSR analysis dicta. A statement in a case can be considered dicta if it "was not necessary to the determination of the issue on appeal." *United States v. Hardin*, 539 F.3d 404, 411 (6th Cir. 2008). In *Bartee*, in order to convince the district court to treat the defendant's prior conviction as a "crime of violence," "the government urged the district court to use 'common sense' to infer that since the defendant had sexual contact with Angela 'while' soliciting a minor, Angela must have been that minor and, therefore, the sexual contact must have been with a minor." *Bartee*, 529 F.3d at 361. As the panel noted, this inference "could only have been drawn by considering the underlying facts" of conviction contained in the PSR. *Id.* If it were appropriate for the district court to look at the PSR and draw the necessary inference, then the *Bartee* panel would have had no reason to vacate the sentence. However, reliance on the PSR by the district court would be appropriate only if the PSR were a *Shepard* document. Thus, a necessary precursor to the panel's decision to vacate the defendant's sentence in *Bartee* was its determination that a PSR is not a *Shepard* document, regardless of whether the government specifically made a *Shepard* argument.

In sum, we conclude that a generic conviction under Ohio Rev. Code § 2907.03 is not categorically a "crime of violence," and that, in the instant case, there is no *Shepard*-approved document in the record that can be used to determine whether Wynn's specific conviction under § 2907.03 constitutes a "crime of violence." We therefore **VACATE** Wynn's sentence and **REMAND** to the district court for the limited purpose of resentencing Wynn after determining whether Wynn qualifies as a career offender in light of *Begay*. On remand, the district court should not consider the factual recitations in the PSR in order to determine whether Wynn's § 2907.03 conviction is a "crime of violence." Instead, the district court should allow the government to submit further evidence on the issue of career-offender status, so long as such evidence adheres to the *Shepard* standard. *See United States v. Baker*, 559 F.3d 443, 455 & n.10 (6th Cir. 2009)

(allowing the government to present new evidence on remand, "[e]ven though at the original sentencing hearing '[t]he government had the burdens of production and persuasion' to prove that defendant's reckless endangerment conviction qualified as a predicate felony under § 4B1.1(a), [because] its failure to do so was justified by 'special circumstances'—the fact that *Begay* had not yet been decided at the time the sentencing hearing took place." *United States v. Goodman*, 519 F.3d 310, 323 (6th Cir. 2008) (quoting *United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C. Cir. 1995)."). Additionally, because Wynn's conviction involves crack cocaine, the district court should consider the Supreme Court's recent pronouncements in *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007), and *Spears v. United States*, --- U.S. ---, 129 S. Ct. 840 (2009), and any other relevant precedents.

### III.  CONCLUSION

For the reasons discussed above, we **VACATE** Wynn's sentence and **REMAND** for proceedings consistent with this opinion.

---

**DISSENTING IN PART**

---

FRIEDMAN, Circuit Judge, dissenting in part.

1. I would affirm the sentence. Unlike the court, I do not conclude "that it would be improper for the district court to rely on the factual recitations in the PSR to determine that Wynn's § 2907.03 conviction was for a 'crime of violence'"– facts which Wynn did not challenge.

As this court has recognized, under *Shepard v. United States*, 544 U.S. 13, 26 (2005). "[W]hen the statutory definition [of the prior crime to which the defendant pleaded guilty] is ambiguous . . . the court may examine . . . 'the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.'" *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008) (quoting *Shepard*). This court's other cases similarly have recognized that in addition to the charging document, the plea agreement or a colloquy between judge and defendant, the sentencing judge also may consider a "comparable judicial record." *United States v. Mosley*, ___ F.3d ___, 2009 WL 2176634, at *4 (6th Cir. 2009).

In criminal cases it is common practice for a defendant who wants to contest or challenge facts set forth in the presentence report to object to them. If a defendant does not do so, it is understood that those facts are admitted and accepted as a basis for determining the sentence. *See United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004) ("'The district court is allowed to accept as true all factual allegations in a presentence report to which the defendant does not object.'"). Here the facts as set forth in the presentence report (which the court quotes in its opinon) relating to Wynn's prior state court conviction for a "sexual battery" leave no doubt that the generic state crime to which he pleaded guilty was categorically a crime of violence.

Since Wynn has not challenged or questioned those facts, there is no valid concern here that attempted reliance upon them would produce the kind of collateral litigation that the Supreme Court wished to avoid when it refused to permit the district court to utilize police reports and complaint applications for determining the character of a state conviction. *See Shepard*, 544 U.S. at 21-23. As this court stated: "One of the policies animating the Court's adoption of this approach was to avoid 'the practical difficulties and potential unfairness' of permitting a sentencing court to relitigate the facts and delve into the details of a prior conviction." *United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006) (quoting *Taylor v. United States*, 495 U.S. 575, 601 (1990).

Indeed, in view of Wynn's failure to challenge those facts, it would appear that he acknowledges their accuracy as a basis for determining his sentence.

The court states, however, that it is "bound" by our alleged holding in *Bartee* that "a district court's use of the factual description of a prior conviction contained in a PSR to determine if the prior conviction is a 'crime of violence' does 'not adhere to the dictates of *Taylor* and *Shepard*.'" Although there are statements in the *Bartee* opinion that provide support for that conclusion, I do not read *Bartee* as so holding or indicating, or as requiring us so to hold.

In *Bartee*, the sentence-enhancing prior Michigan state conviction was for criminal sexual conduct. That crime included sexual contact "under circumstances involving the commission of any other felony." The state information charged the defendant with sexual contact with "another person to-wit: Angela" while committing the felony of soliciting a minor for immoral purposes. The government conceded that the crime of sexual contact of which the defendant was convicted did not require that the contact be with a minor. It contended, however, that because the indictment charged the defendant with sexual contact during the commission of another felony, namely, soliciting a minor for immoral purposes, the district court properly could infer that he was convicted of a "crime of violence" because the person with whom he had sexual contact was the minor girl whom he was charged with soliciting for immoral purposes.

This court noted that "neither the statutory definition nor the amended information specified that the sexual contact was with a minor." 529 F.3d at 361. It held that although it appeared "to have been the case factually" "that since the defendant had sexual contact with Angela 'while' soliciting a minor, Angela must have been that minor and, therefore, the sexual contact must have been with a minor." "[C]ategorically speaking, the conviction did not necessarily require proof of sexual contact with a minor." *Id.* (footnote omitted).

The court then pointed to certain facts "revealed" in the presentence report relating to the sexual relationship between the defendant and Angela. It then stated:

> Not only is this the sort of information that one might expect to find in a police report or application for criminal complaint, but the government also makes no attempt to argue that it was based on *Shepard*-eligible records. While these underlying facts reflect conduct known in common parlance as "statutory rape," that was not the offense to which defendant pleaded guilty.

*Id.*

This court concluded that:

> the district court did not adhere to the dictates of *Taylor* and *Shepard* in determining that the prior conviction in this case was an offense involving sexual contact with a minor. As the Court recently explained, the categorical approach requires that "we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, __ U.S. ___, 128 S. Ct. 1581, 1584, 170 L. Ed.2d 490 (2008).

*Id.*

A footnote to the last quoted sentence includes the following statement:

> Nor can we conclude that the error was harmless simply because the defendant never denied that the prior conviction involved sexual contact with a minor. *See Shephard*, 544 U.S. at 28-29, 125 S. Ct. 1254 (O'Connor, dissenting) (criticizing the majority for rejecting a "common sense" inference that the state burglary convictions involved entry into buildings).

*Id.* at 361 n.4.

I do not view the foregoing statements from *Bartee* or the court's decision there as a holding that in determining the character of the prior sentence-enhancing conviction facts set forth in the pre-sentence report that the defendant did not challenge cannot be considered. *Bartee* did not explicitly so state. Nor did the court's decision necessarily announce such a rule. The court did not refer to the points made in the prior discussion of this partial dissent, which one would think it would have done if it were announcing the broad rule that the court here attributes to it.

It could probably be inferred, based on the statements in *Bartee*, that if the issue of the use of unchallenged statements in a pre-sentence report were presented to the *Bartee* panel, that panel would come out the same way that this court does in this case. *Bartee*, however, did not decide that question, either explicitly or implicitly. In my opinion, such conjectural analysis does not, could not and should not convert the *Bartee* opinion into a binding ruling on that issue.

The Supreme Court's recent case addressing this general subject, *Begay v. United States*, ___ U.S. ___ ,128 S. Ct. 1581 (2008), sheds no light on this issue. The question there was whether a New Mexico conviction for driving under the influence of alcohol constituted a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii), which includes in its definition of "violent felony" a crime that is "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." The Supreme Court held that the state crime was not a "violent felony" under that definition because 'that term covers only crimes "*similar*" to the listed crimes of "burglary, arson, or extortion" "rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" ___ U.S. ___, 128 S. Ct. at 497.

In other words, the only question *Begay* addressed and decided was the scope of the federal statutory definition of "violent felony." Apparently there was no question of what evidence could be considered in deciding whether the state crime of conviction came within the definition, and the Supreme Court did not address that question.

In sum, I believe that whether the presentence report could be considered to determine the character of Wynn's prior conviction is an open question that we may decide either way. For the reasons given, I would hold that consideration of those facts would be permissible.

2. There is another aspect of the court's opinion that troubles me. The court states that "there is no indication in the record as to the subsection of § 2907.03 to which Wynn pleaded guilty." That is correct, if only the presentence report is considered. In *United States v. Alexander*, however, this court dealt with the similar situation in which the question whether a defendant's prior state conviction constituted a categorical "crime of violence" could not be answered by resort to the presentence report. 543 F.3d 819 (6th Cir. 2008). This court upheld an enhanced sentence based on that conviction for a "crime of violence" because the Michigan Department of Correction, and the State Police maintained internet databases that provided "publicly viewable criminal-history records indicating that [the defendant] was in fact convicted of violating a specific statutory provision that was such a crime." *Id.* at 824. The court ruled that "even if the record is not entirely clear about the precise statutory offense that served as one of the predicate crimes, any ambiguity is readily resolved by taking judicial notice of [defendant's] criminal-history records." *Id.*

Similarly, it would seem that in the present case we may take judicial notice of publicly available Ohio judicial records that show unequivocally that the state sexual battery offense of which Wynn was convicted was a "crime of violence." The presentence report in this case shows that that state case was docket CR-01-403077. The Cuyahoga County Common Pleas Court records show that in case no. CR-01-403077 on July 31, 2001, the defendant:

> ENTERS A PLEA OF GUILTY TO SEXUAL BATTERY, RC 2907.03
> A (1) FEL-3 (SB2) AS AMENDED IN COUNT 1 OF THE
> INDICTMENT. COURT FINDS THE DEFENDANT GUILTY.

(*State of Ohio v. Antonio Wynn*, CR-01-403077, Cuyahoga Court of Common Pleas, Docket Information) (*available at* http://cpdocket.cp.cuyahogacounty.us/ ) (Last

checked, August 13, 2008) The state court's records also show that the defendant was sentenced on September 5, 2001 for the sexual battery conviction under § 2907.03(A)(1).

The Ohio criminal statute to which Wynn thus pleaded guilty states:

(A)     No person shall engage in sexual conduct with another, not the spouse of the offender, when ...

      (1)     The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.

Under the *Begay* standard discussed above, this sexual conduct was a "crime of violence." It thus appears that, for this additional reason, the district court here properly enhanced Wynn's sentence as a career criminal. *Alexander* indicates that even if resort may not be had to facts about a prior conviction in the presentence report, judicial notice still may be taken of publicly available judicial records. *Alexander* was decided several months after *Begay* and referred to it. 543 F.3d at 824.

*Alexander* possibly could be distinguished on two grounds. There all of Alexander's "criminal history records" that established the nature of its prior conviction apparently were cited to the court by the government. In the present case, however, it is necessary to rely on the presentence report to ascertain the docket number of Wynn's state conviction. Even if the presentence report generally cannot be used to determine the facts of the prior state sentence-enhancing conviction, I do not think that principle would preclude resort to the presentence report for the limited purpose of determining the docket number of that conviction. That is a fact that, in the language of *Alexander*, is "not subject to reasonable debate in this case." 543 F.3d at 824.

The other possible distinction from *Alexander* is that there the government apparently submitted the state conviction information to the court, whereas here the court itself obtained the data. That fact, however, appears to make this a stronger rather than a weaker case than *Alexander* for taking judicial notice of the state information. Here there is no possibility that the government may have given the court incorrect or inaccurate information about a state conviction.