*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  11a0214p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellant,*

    *v.*

DANIEL ROY GARDNER,

                *Defendant-Appellee.*

No. 07-5947

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 06-00001—Aleta Arthur Trauger, District Judge.

Argued:  April 26, 2011

Decided and Filed:  August 12, 2011

Before:  GIBBONS and WHITE, Circuit Judges; OLIVER, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:**  Blanche Bong Cook, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellant. Jennifer Lynn Thompson, Nashville, Tennessee, for Appellee. **ON BRIEF:**  S. Carran Daughtrey, Courtney D. Trombly, ASSISTANT UNITED STATES ATTORNEYS, Nashville, Tennessee, for Appellant. Jennifer Lynn Thompson, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge.  The government appeals the district court's decision not to apply a fifteen-year mandatory minimum sentence under 18 U.S.C. § 2252A(b)(1) following defendant-appellee Daniel Roy Gardner's guilty plea

_____

[*] The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

for receipt and possession of child pornography.  For the reasons that follow, we affirm the district court's decision.

I.

Gardner, born in Idaho Falls, Idaho, in 1952, left home in 1970 and served in the United States Navy for twenty-one years.  He lived in Chesapeake, Virginia, from 1991 to 1994 and then in Greenbrier, Tennessee, from 1994 to 2002.  In 2002, he moved to Goodlettsville, Tennessee, where he resided at the time of his arrest.

In 1974, Gardner married Candan Yilmazdalay, with whom he had a daughter, Pride.  Pride suffered from neurofibrosarcoma, a condition in which tumors develop in cells surrounding the peripheral nervous system.  Pride battled the condition from infancy and ultimately died of it in 1998.

On April 20, 2005, computer security equipment at RenTech, Inc., a data processing company located in Nashville, Tennessee, detected the presence of child pornography on the company's computer network.  The child pornography was traced to Gardner's office computer, and the FBI was notified.  Six days later the FBI visited Gardner at his home, where he consented to a search.  Agents seized over 600 images and forty-nine videos of minors engaged in sexually explicit conduct or being sexually abused while held in bondage.  After agents advised him of his *Miranda* rights, Gardner confessed to downloading the pornographic material, for which he said he had "a need, maybe an addiction."

Prior to searching Gardner's house, Craig Dickhaus, a special agent in the violent crimes task force for the United States Immigration and Customs Enforcement ("ICE," formerly the United States Customs Service), ran a criminal background check on Gardner and discovered that he had a previous arrest for aggravated sexual battery and a conviction for sexual battery in Virginia.  An official at RenTech confirmed the Virginia conviction to Dickhaus and stated that the victim was Gardner's daughter, Pride.  When Dickhaus questioned Gardner about the Virginia conviction, he allegedly stated: "Unfortunately our daughter was the sexual—object of my sexual desire at the

time." Gardner also told Dickhaus that his daughter was between fifteen and seventeen years old at the time.

Federal investigators began to search for files related to Gardner's Virginia conviction. Because most of the files had been destroyed, initially the investigators were able to locate only copies of an indictment and a judicial order of conviction from the Circuit Court of Chesapeake, Virginia. The indictment, which referenced docket number 92-821, stated:

> On or about December 21, 1991, in the City of Chesapeake, Virginia, the accused, Daniel Ray Gardner, then being over the age of eighteen years, maintaining a custodial or supervisory relationship over a child under the age of eighteen, not legally married to such child with lascivious intent, did knowingly and intentionally sexually abuse such a child, in violation of Section 18.2-370.1 of the Virginia Code.

The indictment charged Gardner with violating Section 18.2-370.1 of the Virginia Code, "Taking indecent liberties with child by person in custodial or supervisory relationship." Va. Code. Ann. § 18.2-370.1. The judicial order, which referenced docket number 92-821, stated that Gardner was charged with "aggravated sexual battery" and found Gardner guilty of "sexual battery." The judicial order also noted that a pre-sentence report had been prepared, presented to the state circuit court, and given to Gardner's counsel who had the right "to cross-examine the Probation Officer as to any matter contained in the said report and to present any additional facts bearing upon the matter as they desired to present." Following cross-examination of the probation officer and Gardner's presentation of additional facts, the state circuit court accepted the pre-sentence report and suspended sentence upon Gardner's good behavior for one year.

Federal authorities indicted Gardner on January 6, 2006, for knowingly receiving and possessing child pornography. The indictment mentioned that Gardner had "a prior conviction under the laws of the state of Virginia for a crime related to sexual abuse and sexual conduct involving a minor." The indictment referenced 18 U.S.C. § 2252A(b)(1), which provides an enhanced minimum sentence of fifteen years for persons receiving or possessing child pornography who "ha[ve] a prior conviction . . . under the laws of

any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." 18 U.S.C. § 2252A(b)(1).

As the case proceeded through pre-trial motions, however, practically no additional evidence of Gardner's prior Virginia conviction was unearthed. This lack of evidence prompted Gardner to file a motion on November 6, 2006, to strike reference to the previous conviction because the Virginia pre-sentence report and plea-colloquy had been destroyed, and the only other evidence found up to that point—notably a report from the division of police—was not evidence the government could use to justify a sentence enhancement under *Shepard v. United States*, 544 U.S. 13 (2005).

The government responded on November 27, 2006, that Gardner's motion was premature. Then, at a hearing on December 5, 2006, the government's attorney announced that "the Circuit Court in Chesapeake, Virginia . . . actually does have a sealed record of the defendant's case. Particularly, it contains the probation report that is specifically referenced in . . . [the] order from 1994." The district court took no action on the motion to strike at that time, but the district court announced that it would

> look to . . . any transcript of the plea colloquy, any plea agreement where he pled to this, and I'm not quite sure about a probation record.
> It will really depend on what the probation record was whether that particular record contains the relevant admissions by the defendant to the probation officer where—whether I feel that this record was relied on and kind of imported into the order where the judge found him guilty of sexual battery.
> This order very carefully keeps out the aspect of a minor, that this was a battery of a minor; in my view, very carefully keeps out, and that's not what he pled to.
> And so I think this is a very fine line that the Court must walk, and I want to make sure that I do it correctly. And you're telling me that there are more records, and so I really don't think I can decide this issue today.

The Virginia pre-sentence report ("VA PSR") arrived, and upon examination, the parties learned that the report contained information relevant to determining the facts underlying Gardner's previous conviction. Specifically, the VA PSR, quoting the report from the division of police, narrated the alleged offense:

> According to Chesapeake Police file material, on January 5, 1992, Pride Gardner reported to Diana Hack a Child Protective Service Worker that her father, the subject, had been massaging her body all over including her breast and vaginal area with lotion. She further indicated that on occasion he had shaved her pubic area stating that she had too much hair around her vagina.

Still quoting the division of police report, the VA PSR also stated that Gardner said:

> I turned myself in to family advocacy Portsmouth Naval Hospital. I was told to call Child Protective Services. I then called Social Services and made an appointment to give a statement. I was directed to move from the residence by the weekend and did so. I scheduled an arrest date with Detective Moore. I have been attending individual therapy, marriage counselling [sic] and family therapy since disclosure in January 92.

The VA PSR noted that Gardner was charged with "Aggravated Sexual Battery" but found guilty of "Indecent Liberties With a Child Custodian." Significantly, this is different from the "Sexual Battery" of which the judicial order stated that he was found guilty.

Gardner pled guilty to receipt and possession of child pornography on February 15, 2007. During the plea hearing, however, Gardner's attorney made clear that he would contest sentence enhancement factors, including the prior conviction enhancement: "in addition, your Honor, . . . we had objected to the prior conviction for a sexual offense against a minor, and we just want to make the record clear that although he's pleading guilty to the indictment . . . we intend to dispute that fact."

Before sentencing, a federal Pre-Sentence Report ("PSR") was prepared for the federal case. The PSR noted Gardner's Virginia conviction and incorporated facts from the VA PSR. The PSR found that the minimum sentence provision of 18 U.S.C. § 2252A(b)(1) applied and recommended a 180-month sentence. After Gardner objected to this part of the PSR, the government filed its Sentencing Memorandum and defended application of the fifteen-year minimum sentence. The government cited the facts contained in the VA PSR and quoted the judicial order confirming Gardner's Virginia conviction in which the state Circuit Court judge noted, "[t]he report of the Probation

Officer is hereby filed as a part of the record in this case." Therefore, according to the government, "[b]y officially incorporating the VA PSR into his order, the sentencing judge adopted the facts therein, without objection from the defense." The government concluded by arguing that the district court could permissibly look to the VA PSR to see if a prior conviction would qualify to justify a sentence enhancement.

The district court disagreed. In a hearing on the matter, the district court noted that

> there's quite a bit of confusion about this conviction in terms of dates and in terms of charges.
> There's statements here, supposedly by the judge, who states that Mr. Gardner was convicted of sexual assault, sexual battery. And then there are documents that contradict that attached to your most recent filing . . . . [The Virginia pre-sentence report] says the offense of conviction is indecent liberties with a child . . . .
> And then you have got the judge saying that it was sexual battery, but that doesn't appear to be what the conviction was . . . .
> So I'm, to be honest, quite confused by these documents. It seems to me they say contradictory things and the dates as well. There's even contradiction on the dates.

The district court then declined to apply the fifteen-year minimum sentence:

> [T]he documentary evidence before me on this conviction is entirely contradictory and unclear. The government wants to rely both on the judge's order, which says that the defendant is guilty of sexual battery, and now a presentence report which clearly says that he was found guilty of indecent liberties with a minor. I don't know what he was found guilty of from this record.
> And given the draconian nature of a 15-year minimum mandatory sentence, I have to be totally and completely convinced that this minimum mandatory applies, and I am not satisfied.
> These documents are contradictory, unclear, both as to the offense, the dates, and everything else. And it's simply not established to my satisfaction. So I'm going to rule that the 15-year minimum mandatory enhancement does not apply.

The district court ultimately sentenced Gardner to 108 months' imprisonment.

II.

This court reviews *de novo* a district court's legal conclusion that a prior conviction triggers a mandatory minimum sentence. *United States v. McGrattan*, 504 F.3d 608, 610 (6th Cir. 2007). However, while a district court's sentencing calculation is reviewed *de novo*, its factual findings are reviewed for clear error. *United States v. Cole*, 359 F.3d 420, 425 (6th Cir. 2004). "[F]or purposes of determining the Guidelines *recommendation*, we continue to accept a district court's factual finding[s] . . . unless [they are] clearly erroneous." *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005) (affirming the clearly erroneous standard of review following *United States v. Booker*, 543 U.S. 220 (2005)). Under the clearly erroneous standard, a reviewing court "will not reverse a lower court's finding of fact simply because [it] would have decided the case differently. Rather . . . [the] reviewing court must ask whether on the entire evidence it is left with the definite and firm conviction that a mistake has been committed." *United States v. Orlando*, 363 F.3d 596, 603 (6th Cir. 2004) (internal quotations and citations omitted).

III.

We first address whether the Virginia judicial order of conviction and indictment are sufficient to justify imposing a sentence enhancement as a matter of law. Because our precedent holds that, when a defendant pleads to a lesser-included offense of the offense charged in the indictment, we may consider only the parts of the indictment "essential to the offense to which [the] defendant entered his plea," *United States v. Arnold*, 58 F.3d 1117, 1124 (6th Cir. 1995), we find that the indictment and judicial order alone do not trigger the mandatory minimum sentence.

Under 18 U.S.C. § 2252A(b)(1), whoever possesses or receives child pornography, "if such person has a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward," shall be "imprisoned for not less than 15 years." At issue here is whether Gardner has a prior conviction in Virginia for sexual abuse involving a minor that should trigger the mandatory minimum.

In *Shepard*, in analyzing the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), the United States Supreme Court stated that, when considering whether a crime to which a defendant has previously pled guilty qualifies under the ACCA, a later court is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  544 U.S. at 16.  Later in the opinion, in a reprise of the list, Justice Souter added "or to some comparable judicial record of this information."  *Id.* at 26.  The limitation on what evidence can be considered stems from the desire "to avoid serious risks of unconstitutionality."  *Id.* at 25 (Souter, J., plurality opinion).  Prior to *Shepard*, the Supreme Court had stated that when the prior conviction in question was based on a jury conviction, courts generally "look only to the fact of conviction and the statutory definition of the prior offense."  *Taylor v. United States*, 495 U.S. 575, 602 (1990).  However, *Taylor* permits a court to look at the indictment if the indictment shows "that the defendant was charged only with" the qualifying conduct. *Id.*; *see also McGrattan*, 504 F.3d at 611.

We adopted the logic and limitations of *Shepard* and its lineage in *McGrattan*. The *McGrattan* court found that "the underlying concern is the protection of the defendant's jury trial right under the Sixth and Fourteenth Amendments," and that "[t]he difference in the statutory language of section 924(e) and section 2252A(b)(1) is immaterial in the constitutional context." 504 F.3d at 612.  Accordingly, we "begin our analysis of . . . section 2252[A](b)(1) case[s] by examining whether the statute of conviction falls within the four corners of the federal statute.  If that process is not conclusive, we will examine available documents permissible under *Shepard* and *Taylor*." *Id.*[1]

---

[1]The government argues that we should not follow the *Shepard* approach because the language of § 924(e) is more restrictive than that of § 2252A(b)(1).  The government reasons that this case can be distinguished from *McGrattan* because *McGrattan* dealt with an Ohio conviction for possession of child pornography while this case deals with a conviction related to sexual abuse.

This is a distinction without a difference.  The § 2252A enhancement for prior convictions for child pornography follows the same "related to" language as that of prior convictions for sexual abuse. The *McGrattan* court explicitly considered § 2252A(b)(1) and found that the constitutional concerns cited in *Shepard* apply. We therefore find that *Shepard* and *McGrattan* govern what evidence may be considered in this case.

The judicial order states that Gardner was found guilty of sexual battery. In Virginia at the time, a defendant committed sexual battery if he "sexually abuse[d] the complaining witness against the will of the complaining witness, by force, threat or intimidation, or through the use of the complaining witness's mental incapacity or physical helplessness." *Walker v. Commonwealth*, 404 S.E. 2d 394, 396 (Va. Ct. App. 1991) (quoting Va. Code. Ann. § 18.2-67.4, as of 1991). The statute of conviction does not require, as an element of the offense, that the complaining witness be a minor; thus, the statute itself does not justify a sentence enhancement.

Pursuant to *McGrattan*, because the statute of conviction is not conclusive, we next turn to the documents permitted under *Shepard* and *Taylor*. 504 F.3d at 612. *Shepard* permits a reviewing court to look to "the statutory definition, *charging document*, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." 544 U.S. at 16 (emphasis added). No record of a plea agreement or plea colloquy from Gardner's Virginia conviction has been offered, but the government did produce a judicial order stating Gardner was found guilty of sexual battery and an indictment stating that Gardner, "maintaining a custodial or supervisory relationship over a child under the age of eighteen . . . did knowingly and intentionally sexually abuse such child."

From the face of the indictment, it is apparent that the complaining witness was a minor, "a child under the age of eighteen."[2] Moreover, the indictment charges Gardner with sexually abusing a minor, and an element of sexual battery—for which Gardner was convicted—is that the accused "sexually abuses the complaining witness." *See Walker*, 404 S.E. 2d at 396. Therefore, examination of the indictment and judicial order, as permitted by *Shepard*, suggests that Gardner "has a prior conviction . . . relating to sexual abuse . . . involving a minor." 18 U.S.C. § 2252A(b)(1).

However, we have further restricted a reviewing court's scope of examination of an indictment. In *United States v. Arnold*, a post-*Taylor* but pre-*Shepard* case, a

---

[2]A minor at the time was defined as someone under the age of eighteen years. Va. Code. Ann. § 1-13.42 (1991), *amended by* 2005 Va. Legis. Serv. 839 (West).

defendant charged with aggravated sexual assault pled *nolo contendere* to assault with intent to commit sexual battery.  58 F.3d 1117, 1124 (6th Cir. 1995).  Because assault with intent to commit sexual battery included both violent and fraudulent behavior, *id.* at 1122, the *Arnold* panel, citing *Taylor*, remanded the case with instructions to the district court to "limit its examination to only those charges in the indictment that are essential to the offense to which defendant entered his plea." *Id.* at 1124.  Post-*Shepard*, we again embraced the *Arnold* logic.  In *United States v. Armstead*, a case involving a potential enhancement under the ACCA, a defendant was indicted for aggravated child abuse but pled guilty only to attempted child abuse.  467 F.3d 943, 949 (6th Cir. 2006).  The *Armstead* court limited its examination of the original indictment to "the elements of the charges that are essential to defendant's plea of guilty to attempted child abuse." *Id.*  Even though the indictment stated Armstead's neglect resulted in "serious bodily injury, to wit: burns to the body," because attempted child abuse does not necessarily include such injury, the panel did not permit consideration of the charges in the indictment and remanded the case for further proceedings.  *Id.* at 950.

We find that Gardner's case is analogous to *Armstead*.  Because he pled only to "sexual battery," and because the victim need not be a minor to support a conviction for sexual battery, the references in the indictment suggesting the victim was a minor are not "essential to the offense to which [Gardner] entered his plea."  Therefore, under *Armstead*, such references must be disregarded.

Although under *Shepard* alone the statute of conviction and charging document together establish that Gardner's prior conviction triggers the mandatory minimum, when references to the victim's age are removed, as required by *Arnold* and *Armstead*, neither the statute nor the charging document establishes that Gardner's prior conviction necessarily related to conduct involving a minor or ward.  Accordingly, we find that the judicial order of conviction and indictment are insufficient to trigger a sentence enhancement as a matter of law.

IV.

Having found the judicial order and indictment insufficient, we now consider whether the VA PSR  may justify the enhancement.  The government argues that a reviewing court may consider the VA PSR because the report is "a comparable judicial record" of Gardner's criminal conviction. *Shepard* specifically permitted consideration of "any explicit factual finding by the trial judge to which the defendant assented," 544 U.S. at 16, and later "some comparable judicial record of [the information found in the indictment, plea agreement, and plea colloquy]." *Id.* at 26.   The government cites the judicial order's statement that Gardner had a chance to contest the VA PSR as evidence that the Sixth and Fourteenth Amendment concerns cited in *McGrattan* do not apply.

This court has previously limited the use of PSRs to justify sentence enhancements.  In *United States v. Bartee*, 529 F.3d 357, 359–61 (6th Cir. 2008), having noted that police reports and criminal complaint applications are not permissible *Shepard* documents, we precluded consideration of a PSR that included information from such sources because the defendant had not pled guilty to a crime that necessarily required proof of the facts listed.  Later, when asked to find that a PSR is "a comparable judicial record" under *Shepard*, we drew on *Bartee* to find that "a district court's use of the factual description of a prior conviction contained in a PSR . . . does 'not adhere to the dictates of *Taylor* and *Shepard*.'"  *United States v. Wynn*, 579 F.3d 567, 575–76 (6th Cir. 2009) (quoting *Bartee*, 529 F.3d at 361).  Having precluded use of the factual recitations in a PSR to justify a sentence enhancement, the *Wynn* court concluded that PSRs are non-*Shepard* documents, *id.* at 576, a finding that the court noted was consistent with *Shepard* and *Taylor* because "a PSR prepared for a federal district-court sentencing can never be a record of a convicting state court."  *Id.* at 577.

Although in this case the government requests permission to use the factual recitations contained in a state PSR, rather than a federal PSR, we find that the logic of *Bartee* and *Wynn* extends to Gardner's case.  *Bartee* and *Wynn* both limited consideration of federal PSRs because the facts in the PSRs were not required to sustain the defendants' convictions and were never necessarily admitted by the defendants.  The

same circumstances exist here, and we see no reason that a state PSR should be permissible under *Shepard* when a federal PSR would not be.**3**

The government would have us distinguish *Bartee* and *Wynn* by finding that Gardner specifically assented to the facts in the VA PSR. At first glance, the judicial order appears to confirm this view. However, for the VA PSR to be considered under *Shepard*, it must be an "explicit factual finding by the trial judge to which the defendant assented." 544 U.S. at 16. Gardner contests whether he assented to the VA PSR presented to the district court by arguing that there "is no documentation to show that [he] or his counsel reviewed *this* 'presentence' report."

The district court found that the validity of the VA PSR was too questionable for it to serve as the factual predicate for a sentencing enhancement. Before the VA PSR was received, the district court noted that the judicial order "very carefully keeps out . . . that this was a battery of a minor." Ultimately, the district court decided there were too many apparent contradictions and inconsistencies between the Virginia PSR and the judicial order to establish that the documents submitted were ones to which Gardner assented. We find it was not clearly erroneous for the district court to make such a finding.

There are some inconsistencies between the VA PSR and the judicial order. The VA PSR states that Gardner was charged with "Aggravated Sexual Battery" and convicted of "Indecent Liberties with a Child," but the judicial order finds Gardner guilty of "sexual battery." The VA PSR states that the matter would be heard and sentencing completed on August 24, 1992, but the judicial order was not entered until April 5, 1994.

---

**3**We also note that because our precedent holds that the facts of an indictment may not be considered unless those facts are "essential to the offense to which [the] defendant entered his plea," *Armstead*, 467 F.3d at 949, it would be anomalous to permit the facts of a PSR alleging both a charge and a conviction greater than the offense to which Gardner pled. Consistency with *Armstead* and *Bartee* suggests we should not permit consideration of PSRs detailing facts and offenses greater than those to which a defendant has pled or necessarily admitted.

Additionally, the VA PSR and the judicial order contain elements that concern us.  First, there is no official stamp on the VA PSR to show it was ever filed with the court, much less reviewed by the judge or assented to by Gardner.  Second, the judicial order of April 1994 states that there were "matters brought out on cross-examination of the Probation Officer and such additional facts as were presented by the defendant," but because the VA PSR dates to August 1992—prior to the hearing referenced in the judicial order or listed by the report—the "matters brought out on cross-examination" and the "additional facts" presented by Gardner are almost certainly missing.  This strongly suggests that Gardner did not assent to the report received by the district court.

When reviewing a district court's factual findings for clear error, we overturn the district court's decision only if "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." *Orlando*, 363 F.3d at 603.  Rather than establishing a firm conviction that a mistake has been made, we find that the record shows the district court was correct to find the VA PSR unreliable.  We therefore affirm the district court's ruling that the VA PSR cannot be used to justify a sentence enhancement.

Without the VA PSR, there is no record showing Gardner was convicted of a crime related to sexual abuse of a minor.  Because a PSR is not automatically a *Shepard* document, and because there is not adequate evidence that Gardner assented to the facts contained in the VA PSR, we affirm the district court's decision not to apply an enhancement to Gardner's sentence.

V.

For the foregoing reasons, we affirm the district court's decision.