RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0091p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JAMES ARMES,

*Defendant-Appellant*.

⎫
⎪
⎪
⎪
⎬  No. 19-5539
⎪
⎪
⎪
⎭

───────────────

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 4:18-cr-00011-1—Joseph H. McKinley, Jr., District Judge.

Argued: January 28, 2020

Decided and Filed: March 26, 2020

Before: COLE, Chief Judge; COOK and THAPAR, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Frank W. Heft, Jr., OFFICE OF THE FEDERAL DEFENDER, INC., Louisville, Kentucky, for Appellant. L. Jay Gilbert, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee. **ON BRIEF:** Frank W. Heft, Jr., Donald J. Meier, OFFICE OF THE FEDERAL DEFENDER, INC., Louisville, Kentucky, for Appellant. L. Jay Gilbert, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

THAPAR, J., delivered the opinion of the court in which COOK, J., joined. COLE, C.J. (pp. 14–19), delivered a separate dissenting opinion.

───────────────

## OPINION

───────────────

THAPAR, Circuit Judge. Federal law mandates tough sentences for child pornographers—especially those with a history of sexual abuse. James Armes had such a history

and received an enhanced sentence as a result. Because the district court got the law right and chose a reasonable sentence, we affirm.

I.

Armes pled guilty to five counts of producing, two counts of distributing, and one count of possessing child pornography. *See* 18 U.S.C. §§ 2251(a), 2252A(a)(2), 2252A(a)(5)(B). The images showed him molesting two members of his family—one an infant, the other a toddler— by fondling them and placing his genitals on various parts of their bodies.

This wasn't Armes's first run-in with the law over his sexual behavior. The presentence report related that in 2005 Armes pled guilty to two counts of Kentucky third-degree rape. *See* Ky. Rev. Stat. Ann. § 510.060 (West 2005). The report added: "According to the Indictment, the defendant engaged in sexual intercourse with a victim that was less than 16 years old . . . while the defendant was over 21 years old." R. 25, Pg. ID 167 (PSR ¶ 84). Armes didn't object to these statements or (for that matter) any other factual statements in the report.

These past convictions had sentencing consequences. Normally, the minimum prison terms for producing, distributing, and possessing child pornography are fifteen, five, and zero years (respectively). But those numbers rise to twenty-five, fifteen, and ten years for certain repeat sex offenders—including those with a past conviction under a state law "relating to aggravated sexual abuse, sexual abuse, [or] abusive sexual contact involving a minor or ward[.]" 18 U.S.C. §§ 2251(e), 2252A(b)(1)–(2). The district court found that Armes's past convictions for Kentucky third-degree rape qualified under this sentencing enhancement. So the court applied the enhancement, making Armes's minimum sentence twenty-five years.

The Sentencing Guidelines recommended the *maximum* possible sentence—three hundred and fifty years. But the government asked for only seventy-five years. In the end, the district court varied even lower and went with fifty years.

Armes now challenges his sentence on two grounds: (1) his Kentucky rape convictions don't trigger the sentencing enhancement, and (2) his fifty-year sentence is substantively unreasonable.

II.

The first challenge calls for some background. The bottom-line question is whether Armes's state convictions relate to "aggravated sexual abuse, sexual abuse, [or] abusive sexual contact involving a minor or ward," as those terms are commonly understood. 18 U.S.C. §§ 2251(e), 2252A(b)(1)–(2); *see United States v. Mateen*, 806 F.3d 857, 862 (6th Cir. 2015) (holding that "sexual abuse" should be understood according to its "common meaning").[1] To answer that question, we apply the so-called "categorical approach," which means parsing the *elements* of Armes's state offense to determine whether the offense *necessarily* relates to "sexual abuse" (or "aggravated sexual abuse" or "abusive sexual contact involving a minor or ward"). *Mateen*, 806 F.3d at 862 (cleaned up).

But there's a complication: at the time of Armes's conviction, Kentucky used the "third-degree rape" label for not one but three different ways of breaking the law:

(1) A person is guilty of rape in the third degree when:

    (a) He engages in sexual intercourse with another person who is incapable of consent because he is mentally retarded;

    (b) Being twenty-one (21) years old or more, he engages in sexual intercourse with another person less than sixteen (16) years old; or

    (c) Being twenty-one (21) years old or more, he engages in sexual intercourse with another person less than eighteen (18) years old and for whom he provides a foster family home[.]

Ky. Rev. Stat. Ann. § 510.060 (West 2005). Since these three versions of third-degree rape had distinct sets of elements, they were distinct crimes. In the jargon of federal criminal law, the statute was "divisible," meaning that we use the "modified categorical approach" to determine the particular crime of conviction. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

---

[1]This circuit doesn't define those terms by cross-referencing the federal crimes defined in 18 U.S.C. §§ 2241–44—entitled, respectively, "Aggravated sexual abuse," "Sexual abuse," "Sexual abuse of a minor or ward," and "Abusive sexual contact." *Mateen*, 806 F.3d at 860–61; *cf.* 18 U.S.C. front matter ("Act June 25, 1948, ch. 645, § 19, 62 Stat. 862, provided that: 'No inference of a legislative construction is to be drawn . . . by reason of the catchlines used in [Title 18].'"). So Armes's argument that the sentencing enhancement doesn't apply because Kentucky third-degree rape doesn't track all the elements of § 2243 or § 2244 is simply wrong.

All this means that for Armes's sentencing enhancement to be proper, one of two things must be true.  Option one:  the district court had enough information to determine the *particular* crime of conviction, *and* that crime categorically qualifies under the enhancement.  Option two: *all three* crimes categorically qualify under the enhancement.  In this case both are true.  Thus, the district court properly applied the enhancement.

A.

Start with option one.  The presentence report said (1) that Armes pled guilty to two counts of third-degree rape and (2) that the indictment in that case alleged that Armes "engaged in sexual intercourse with a victim that was less than 16 years old . . . while the defendant was over 21 years old."  R. 25, Pg. ID 167 (PSR ¶ 84).  That charge matches the elements of one (and only one) version of Kentucky third-degree rape.  *See* Ky. Rev. Stat. Ann. § 510.060(1)(b) (West 2005).

If Armes was convicted of *that* offense, then this case boils down to an easy question: does the ordinary meaning of "sexual abuse" cover the statutory rape of a fifteen-year-old (or younger) by someone who's at least twenty-one?  Of course it does.  To state the obvious, "sexual intercourse" is "sexual."  And when an adult takes sexual advantage of a child or early teen, that's "abuse."  *See, e.g.*, *United States v. Savoy*, 280 F. App'x 504, 509 (6th Cir. 2008) ("At a minimum [the defendant's] act could constitute statutory rape, and consequently sexual abuse."); *United States v. Baron-Medina*, 187 F.3d 1144, 1147 (9th Cir. 1999).  In fact, the Supreme Court has held that "sexual intercourse" may be considered "abusive solely because of the ages of the participants" if the victim is younger than sixteen.  *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1572 (2017) (interpreting "sexual abuse of a minor" as used in 8 U.S.C. § 1101(a)(43)(A)).  In short, if Armes's past convictions were under then-current Ky. Rev. Stat. § 510.060(1)(b), then they fit comfortably within the terms of the sentencing enhancement.

So could the district court determine that this was Armes's crime of conviction based on the presentence report?  Well-settled principles tell us yes.  If anything is certain in the oft-confusing world of the modified categorical approach, it's that a court can use a formal charging document (*i.e.*, an indictment or information) to determine a defendant's crime of conviction.

*Shepard v. United States*, 544 U.S. 13, 16, 26 (2005); *see also, e.g.*, *United States v. Mahon*, 444 F.3d 530, 535–36 (6th Cir. 2006). And if anything is certain in the world of sentencing procedure, it's that a court "may accept *any* undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A) (emphasis added); *see, e.g.*, *United States v. Denson*, 728 F.3d 603, 614 (6th Cir. 2013). Armes raised no objections to the report, so the district court properly adopted it in full—including its description of the charge in the indictment. And the district court properly relied on the charge to determine Armes's crime of conviction.

But not so fast, says Armes: even if logic demands this result, binding circuit precedent bars it. *See United States v. Wynn*, 579 F.3d 567 (6th Cir. 2009). In *Wynn*, this court stated that a presentence report isn't an acceptable "*Shepard* document"—that is, not a document courts may use under the modified categorical approach. *See id.* at 576–77. Based on this language from *Wynn* (and other cases that echo it), Armes concludes that the report's description of the indictment wasn't enough to pinpoint his crime of conviction. Only the indictment *itself* would do.

But as Chief Justice Marshall put it long ago, "[i]t is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." *Cohens v. Virginia*, 19 U.S. 264, 399 (1821). To read our precedents as Armes does would disregard that maxim.

To see why, consider three prior cases: (1) *Wynn*'s forerunner, *United States v. Bartee*, 529 F.3d 357 (6th Cir. 2008); (2) *Wynn* itself; and (3) *United States v. Hockenberry*, 730 F.3d 645 (6th Cir. 2013). Once we understand these three cases, the rest fall easily into place.

1. Start with *Bartee*. There, the defendant had a conviction for "engag[ing] in sexual contact . . . under circumstances involving the commission of any other felony." 529 F.3d at 360 (quoting Mich. Comp. Laws § 750.520c(1)(c)). The government argued this conviction should count as a "crime of violence" because it involved sexual contact with a minor. *Id.* at 360–61. True, the elements of the crime didn't say anything about sex with a minor. *See id.* at 360. But "the underlying facts" showed that the victim was fifteen. *Id.* at 361.

The problem with this is that the categorical approach simply does not care about "underlying facts"—a phrase courts use to refer to the specific circumstances of a specific defendant's violation of the law. *See Mathis*, 136 S. Ct. at 2252 (explaining that the categorical approach "avoid[s] any inquiry into the underlying facts" (quoting *James v. United States*, 550 U.S. 192, 214 (2007))); *Taylor v. United States*, 495 U.S. 575, 601 (1990) (adopting the categorical approach in part to avoid the need for a "record of the underlying facts"). The *only* facts it cares about are the facts that were "integral to the defendant's conviction"—the *elements* "necessarily found [by a jury] or admitted [by a guilty plea]." *Mathis*, 136 S. Ct. at 2249.

Thus, in *Bartee*, this court held that relying on the underlying facts "did not adhere to the categorical approach." 529 F.3d at 360. It did not particularly matter that some of those facts were in the presentence report—in fact, the government's argument was based on the *charging document* (an undoubted *Shepard* record). *Id.* at 361; *see id.* at 360 (noting that "the government relied solely on the amended information"). The fundamental problem in *Bartee* was not that the government was getting its information *from the wrong document*. The problem was that it was looking to the wrong "sort of information"—"underlying facts" that were simply irrelevant to the elements of the crime. *Id.* at 361.

2. With this background in mind, now consider *Wynn*. The defendant there had a conviction under a state statute with nine widely disparate subsections. *See Wynn*, 579 F.3d at 572. The government argued that "the underlying facts of the prior conviction, as detailed in the PSR," could pinpoint which particular subsection the conviction was for. *Id.* at 575. Once again, these "underlying facts" were the specific circumstances of the offense. *See id.* at 569–70.

Unsurprisingly, the *Wynn* panel found itself "bound by *Bartee*" to reject the government's argument. *Id.* at 576. The panel looked to *Bartee* for its understanding of the categorical approach: that courts "must look only to *the fact of conviction*" and the elements it implies—"not the facts underlying the offense." *Id.* at 571 (quoting and adding emphasis to *Bartee*, 529 F.3d at 359). It twice quoted *Bartee*'s concern that the facts in the presentence report were the wrong "sort of information." *Id.* at 576 (quoting *Bartee*, 529 F.3d at 361). On top of this, a footnote in *Wynn* favorably quoted an unpublished case where the court used a

presence report but "*properly* focused on the statutory definition"—not what the report said about "the factual basis for the conviction." *Id.* at 576 n.6 (cleaned up).

All this makes it seem that *Wynn* (like *Bartee*) simply applied basic categorical-approach principles, excluding the facts in the report because they were "underlying facts." Indeed, our court later read *Wynn* and *Bartee* in exactly this way. *See United States v. Gardner*, 649 F.3d 437, 445 (6th Cir. 2011) ("*Bartee* and *Wynn* both limited consideration of [ ] PSRs *because* the facts in the PSRs were not required to sustain the defendants' convictions and were never necessarily admitted by the defendants." (emphasis added)). And under this reading, *Wynn* doesn't help Armes. Why not? Because his presentence report's description of the indictment doesn't go to the "underlying facts." It goes to *the charges* and thus the elements of his convictions—just what we want to know under the categorical approach (whether regular or modified).

Admittedly, *Wynn* includes some loose language suggesting a broader rule: that presentence reports *as such* are off-limits in the modified categorical approach. *See, e.g.*, 579 F.3d at 576 ("declaring PSRs to be non-*Shepard* documents"); *id.* at 577 (reading *Bartee* to hold "that a PSR is not a *Shepard* document"). But to understand loose language in an opinion, we must read it in light of the *more precise* language in the opinion. *See Cohens*, 19 U.S. at 399. The question in *Wynn* was whether "*the factual recitation* in a PSR" was acceptable under *Shepard*. 579 F.3d at 575 (emphasis added). And that was just another way of asking whether a court could consider "the underlying facts of the prior conviction." *Id.*; *see also id.* at 575–76 (relying on *Bartee*'s prohibition against "use of the factual description of a prior conviction contained in a PSR"). Reading the opinion as a whole, even *Wynn*'s loose language fits a simple application of basic categorical-approach principles.

You might ask, if that's all *Wynn* did, why did it include this loose language about presentence reports? But there's no surprise if we consider *Wynn*'s vintage. For years after *Shepard*, courts struggled with how to articulate the relationship between the regular and modified versions of the categorical approach. Not until *United States v. Descamps* did the Supreme Court make crystal clear that the modified version is simply the way you apply the categorical approach to a divisible statute. *See* 570 U.S. 254, 263 (2013).

Traces of an outdated type of analysis show up throughout *Wynn*. For instance, *Wynn* (following *Bartee*) used the word "ambiguous" to mean what courts now understand by the term "divisible." 579 F.3d at 571 (quoting *Bartee*, 529 F.3d at 359); *see also id.* at 575. It also framed the modified categorical approach as "an exception to the categorical approach." *Id.* at 571; *see also id.* at 575. We now know that was incorrect. *See Descamps*, 570 U.S. at 263.

Given this confusion, one reading of *Wynn* might be that it did *not* apply basic categorical-approach principles because it did not regard the modified approach as merely a special case of the *regular* categorical approach. If so, *Descamps* cut *Wynn*'s legs out from under it. But again, we don't have to read *Wynn* that way. Notwithstanding its imprecise language (a product of its time), *Wynn* reached the right result by applying the right principles—the same ones as *Bartee*. And again, those principles don't support Armes.

3. The third case, *Hockenberry*, is the clincher. There, the panel prefaced its sentencing discussion with two rule statements—one positive, one negative:

(1) A court *may* "rely on unchallenged PSR findings to establish the *existence* of prior convictions." 730 F.3d at 666 (citing unpublished cases).

(2) But, because "PSR findings are not *Shepard* material," a court may *not* use them "to establish the specific nature of a conviction." *Id.* (citing *Wynn*, 579 F.3d at 576–77).

At first, this dichotomy seems to support Armes. But let's look a little more closely.

The *Hockenberry* panel did not explain what it meant by "existence" or "specific nature." That's unfortunate because, on reflection, the distinction is far from self-evident. How do we know which facts about a conviction go in which bucket? Is "existence" just the mere fact that the defendant *has* a conviction? Or does it also cover at least some basic facts *about* the conviction? There are some facts for which courts routinely rely on uncontested presentence reports—for instance, the *state* and *court* that imposed the conviction, the *date* of the conviction, and the *statute* (divisible or not) supporting the conviction. No one (not even Armes) thinks that using presentence reports for *these* facts is problematic. But if these facts are permissible, what separates them from the impermissible facts? Where does "existence" end and "specific nature"

begin?  (For that matter, *does* existence end where specific nature begins—or is there a third category in between?)

The upshot of these questions is that *Hockenberry*'s two broad rule statements do not interpret themselves.  So let's try a different approach and look at how the panel decided the concrete sentencing issues that were before it.  As relevant here, *Hockenberry* held three things: (1) The district court didn't err by using the presentence report to find that the defendant had three prior convictions.  *Id.* at 666–67.  (2) Charging documents in the record showed that two of those convictions (for Pennsylvania burglary) were violent felonies.  *Id.* at 668–69.  (3) The third conviction—for Ohio fourth-degree failure to comply—was also a violent felony under the now-invalid residual clause of the Armed Career Criminal Act.  *Id.* at 669–71.

What do these holdings tell us?  For one, notice what *Hockenberry* did *not* hold:  that the district court committed any error in its use of the presentence report.  So regardless of what the second, negative rule statement *meant*, it looks like dictum.  If you're skeptical, try this handy dicta-spotting test:  black out the relevant sentence and then see if the opinion still makes sense. If it does—as here—then the removed sentence is dictum.  *See Wynn*, 579 F.3d at 577 (A statement is dictum "if it was not necessary to the determination of the issue on appeal." (cleaned up)).

More importantly, these holdings show that *Hockenberry*'s negative rule statement could not mean what Armes needs it to mean (dictum or not).  Why not?  Because *Hockenberry itself* relied on the presentence report—and nothing but the presentence report—to pinpoint which part of a divisible statute a conviction was for.  The defendant's third violent-felony conviction was under the Ohio failure-to-comply statute, which is divisible into several distinct offenses.  *See* Ohio Rev. Code § 2921.331(A)–(C)(5)(a).  The government produced no *Shepard* evidence to narrow down this conviction.  *See Hockenberry*, 730 F.3d at 666.  But the presentence report said that the conviction was a fourth-degree felony, which meant that it could only match one set of elements in the statute.  *See id.* at 670–71; Ohio Rev. Code § 2921.331(B), (C)(4).  The panel accepted this finding at face value and held that fourth-degree-felony failure to comply was a violent felony.  *Hockenberry*, 730 F.3d at 670–71.

Given that *Hockenberry* used a presence report (and nothing more) to find the right set of elements within a divisible code section, it's hard to see what it would mean for *Hockenberry* to hold that courts may not use a report to find a crime's "specific nature." But if we step back and simply ask *why* it was acceptable for *Hockenberry* to use the report as it did, the answer is obvious: the "fourth-degree felony" specification in the report was the right *kind* of information. It went to the *elements* of the conviction—not the underlying facts. Thus, considering it did not violate the categorical approach (as considering the facts in *Bartee* and *Wynn* would have).

In short, *Hockenberry* doesn't bar courts from relying on undisputed presence reports for the right kind of information. And we can quickly confirm that no other published case does either. To be sure, several decisions cite *Wynn* for its broad language about the irrelevance of presence reports. But of those cases, the ones that apply *Wynn* only reject attempts to use *underlying facts*. *See In re Sargent*, 837 F.3d 675, 678 & n.2 (6th Cir. 2016)[2]; *United States v. Ferguson*, 681 F.3d 826, 830, 832 (6th Cir. 2012); *Gardner*, 649 F.3d at 440–41, 445; *United States v. Anglin*, 601 F.3d 523, 529 (6th Cir. 2010). Others don't apply *Wynn* at all; they just cite it in dicta. *See United States v. Kearney*, 675 F.3d 571, 575 n.4 (6th Cir. 2012); *United States v. Gross*, 662 F.3d 393, 407 n.7 (6th Cir. 2011); *see also United States v. Cooper*, 739 F.3d 873, 881 (6th Cir. 2014) (citing *Hockenberry*, 730 F.3d at 666–67, in dictum). And one just notes (without citing precedent) that the parties agreed that using the presence report would be improper. *United States v. Stafford*, 721 F.3d 380, 397 (6th Cir. 2013). That does not constitute a holding. *See Wright v. Spaulding*, 939 F.3d 695, 704 (6th Cir. 2019).

In the end, this court has never extended *Bartee* and *Wynn* beyond this simple rule: under the categorical approach (regular or modified), a court may not consider the underlying facts of an offense contained in a presence report. This rule is based on the nature of the categorical approach, which ignores underlying facts *regardless* of the document in which they are set forth. The rule is *not* based on any peculiar traits of presence reports as such. To the extent that general expressions in our precedents (especially *Wynn* and *Hockenberry*) suggest a different

---

[2]The opinion in *Sargent* does not make clear what possible use of the presence report the panel was rejecting. *See* 837 F.3d at 678. But for the conviction in question, the report itself set forth only underlying facts; it did not include any information going to the elements. Thus, any consideration of the report would have been of the same forbidden kind as in *Bartee* and *Wynn*.

understanding, those expressions were imprecise and are best retired.  Under this understanding, courts may determine the elements of a prior conviction based on a presentence report's undisputed characterization of relevant *Shepard* material.

Contrary to the dissent's worries, this holding doesn't collapse the distinction between *Shepard*'s "source limitation" and the "elemental-facts-only restriction."  *See* Dissenting Op. at 15–16 (quoting *United States v. Hennessee*, 932 F.3d 437, 442–44 (6th Cir. 2019)).  The point is not that courts can treat presentence reports like *Shepard* documents.  Rather, it's that courts can trust undisputed presentence reports *when they describe the contents* of actual *Shepard* documents.  So a court may use a presentence report only when:  (1) the relevant part of the report is undisputed; (2) it characterizes an underlying state-court record; and (3) that underlying record is itself acceptable *Shepard* material (that's the "source limitation").  And the court may consider the presentence report only to determine the elements of the prior conviction (that's the "elemental-facts-only restriction").

All this may sound a bit abstract, but this case should make clear why it must be right.  Again, Armes doesn't dispute that the district court could trust the following findings in his presentence report:  (1) he had two state convictions; (2) those convictions were from 2005; and (3) they were for *some* form of third-degree rape under Ky. Stat. Rev. § 510.060.  Now, those findings are ultimately statements about the contents of state-court records:  they mean that fifteen years ago, a Kentucky court entered judgment against Armes on two counts of third-degree rape.  No court has ever required a district court to have the actual judgment before it could credit these findings.  After all, the findings were undisputed.  And district courts trust undisputed descriptions in presentence reports every day.

But if the district court could trust the report's description of the *judgment*, then surely it could trust its description of the *indictment* too.  Both documents are state-court records that define Armes's past conviction.  What principled rule could justify treating them differently?

And if the district court could trust the report's description of the indictment, then surely it could *use* the indictment to determine the elements of Armes's crime.  Indictments are classic

*Shepard*-approved sources.  The dissent shows no gaps anywhere in this logic.  And as we've seen, a careful reading of circuit precedent doesn't bar the conclusion either.

In sum, the presentence report allowed the court to find that Armes was indicted for and pled guilty to having sex with someone under sixteen while he was twenty-one or older, contrary to then-existing Ky. Rev. Stat. § 510.060(1)(b).  And that crime categorically qualifies for the sentencing enhancement.  Thus, Armes's enhanced sentence was proper.

## B.

The result is the same even if we assume that the presentence report did *not* allow the district court to find that Armes's convictions were under then-existing Ky. Rev. Stat. § 510.060(1)(b).  That's because the two other versions of Kentucky third-degree rape that existed in 2005 *also* qualify for the sentencing enhancement.  Again, those crimes are:  (1) sexual intercourse with a victim "incapable of consent because he [or she] is mentally retarded" and (2) sexual intercourse between a foster child under eighteen and his or her foster guardian twenty-one or older.  Ky. Rev. Stat. Ann. § 510.060(1)(a), (c) (West 2005).

Both crimes fit comfortably within the common meaning of the term "sexual abuse." Why?  Because both involve sexual intercourse that tends to "injure, hurt, or damage" the victim. *Mateen*, 806 F.3d at 861.  In the first case, this is because the victim is categorically unable to consent.  *See id.* at 863 (holding that nonconsensual sex is abusive).  In the second, it's because the foster guardian has not only taken advantage of the victim's youth but also abused a position of trust.  This extra element cures any worry about the higher age ceiling (eighteen versus sixteen).  In *Esquivel-Quintana*, the Supreme Court held that the generic immigration-law offense of "sexual abuse of a minor" requires a victim younger than sixteen when the crime is defined *solely* by the ages of the participants.  137 S. Ct. at 1572.  But it also acknowledged (based on state statutes very similar to this one) that the crime "may include a different age of consent where the perpetrator and victim are in a significant relationship of trust." *Id.*; *see also Thompson v. Barr*, 922 F.3d 528, 535 (4th Cir. 2019).  Although this was not technically a holding, it's a strong hint and we have no reason not to take it.  (If you still have any doubts, imagine a news story about an adult who had sex with his seventeen-year-old foster child.

Would it violate ordinary English if that story used the words "abuse" or "abusive" to describe the adult's behavior? Clearly not.)

Because each version of Kentucky third-degree rape that existed in 2005 qualifies for the sentencing enhancement, Armes's enhanced sentence was proper.**[3]**

III.

Finally, Armes argues that a fifty-year sentence is too long for what he did. But the district court reached that sentence after giving due deliberation to the sentencing factors. *See* 18 U.S.C. § 3553(a). And this circuit presumes that within-Guidelines sentences are reasonable. *See, e.g.*, *United States v. Burns*, 498 F.3d 578, 581 (6th Cir. 2007). Given Armes's disturbing crimes and extensive criminal history, we can't say the district court abused its discretion by imposing a sentence *one-seventh* of what the Guidelines advised. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (defining the standard of review).

We affirm.

---

**[3]**The dissent doesn't challenge this holding on the merits. Instead, it argues that we shouldn't reach the issue because the government has "forfeited" it. Dissenting Op. at 18. But as our court often says, we may affirm on an alternative legal ground even if the parties haven't raised it. *See, e.g.*, *Hutcherson v. Lauderdale Cty., Tenn.*, 326 F.3d 747, 756 (6th Cir. 2003).

What's more, the dissent leaves out the other (and more important) side of the story: Armes has failed to argue that the other two versions of third-degree rape are *not* qualifying offenses. As the appellant, Armes has the burden to explain why his sentence is erroneous. *See, e.g.*, *McCoy v. Court of Appeals of Wis., Dist. 1*, 486 U.S. 429, 436 (1988). And his sentence cannot possibly be erroneous unless at least one version of the Kentucky third-degree rape does not qualify as a predicate offense. In short, Armes hasn't carried his burden to show error. The dissent's approach "would open the door to a perverse jurisprudence by which properly decided district court decisions could be reversed" "simply because an appellee fails to defend [them] adequately." *United States v. Iverson*, 818 F.3d 1015, 1023 (10th Cir. 2016) (cleaned up). And that result would be especially perverse here given that Armes failed to make *any* substantive argument against the sentencing enhancement in the district court.

---

**DISSENT**

---

COLE, Chief Judge, dissenting.   Where we use the modified categorical approach to determine whether a state offense is a predicate crime for purposes of a federal sentencing enhancement, our court's binding precedent forbids relying on a presentence report (PSR) to determine the specific iteration of a divisible statute under which the defendant was previously convicted.  *See United States v. Wynn*, 579 F.3d 567, 575–77 (6th Cir. 2009).   Because the majority defies this precedent, I respectfully dissent.

To start, let's consider the context of why our caselaw constrains a sentencing court's factfinding in the present circumstances.  The Sixth Amendment generally requires any fact that increases a defendant's statutory minimum or maximum sentence be found by a jury, not a judge. *Alleyne v. United States*, 570 U.S. 99, 103 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000).  When a sentencing court utilizes the modified categorical approach to determine the applicability of a statutory sentencing enhancement, we are dealing with a narrow exception to this general rule.  In an "exceptional departure" from the Sixth Amendment's ordinary jury-factfinding requirement, the Supreme Court has allowed district courts—rather than a jury—to find the fact of a prior conviction, even where that fact is used to enhance a defendant's statutory sentencing range.  *See Apprendi*, 530 U.S. at 487 (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)).

Cognizant of the consequences that prior-conviction findings can have for a defendant's sentence, the Supreme Court has imposed procedural safeguards on sentencing courts to ensure that courts do not violate a defendant's Sixth Amendment rights when they conduct factfinding that alters a statutory sentencing range.  *See Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016); *Descamps v. United States*, 570 U.S. 254, 269–70 (2013).  To illustrate why such safeguards are important, consider the case at issue here.  The district court's finding of fact regarding Armes's prior convictions raised his statutory mandatory minimum sentence as to each count of the eight-count indictment by ten years.

Two safeguards are pertinent to the present case: 1) "the *Shepard-Taylor* source limitation" and 2) "the elemental-facts-only restriction." *See United States v. Hennessee*, 932 F.3d 437, 443 (6th Cir. 2019). The first restriction, the source limitation, constrains the documents on which a court may rely when using the modified categorical approach. *See Descamps*, 570 U.S. at 262 (explaining that "sentencing courts" are only "authorized" to "scrutinize a restricted set of materials" when utilizing the modified categorical approach); *United States v. Burris*, 912 F.3d 386, 393 (6th Cir. 2019) (en banc) (reiterating that a court may only consult a "limited class of documents" when using this approach).

In particular, under the Supreme Court's decisions in *Shepard* and *Taylor*, when a sentencing court attempts to determine the specific iteration of a divisible statute under which a defendant previously pleaded guilty, it must restrict its review to the following list of "records of the convicting court": the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16, 23 (2005) (citing *Taylor v. United States*, 495 U.S. 575 (1990)).

In *United States v. Wynn*, 579 F.3d 567 (6th Cir. 2009), the government asked that we rely on a PSR, rather than a source specifically approved of in *Shepard* and *Taylor*, to determine the particular subsection of a statute under which the defendant had been convicted, and we unequivocally rejected that request. *See id.* at 575–77. We held that *Shepard* and *Taylor* forbid relying on a PSR because "evidence of [a] [prior] conviction [must] be confined to records of the convicting court," and "a PSR prepared for a federal district-court sentencing can never be a record of a convicting state court." *Id.* at 576–77 (quoting *Shepard*, 544 U.S. at 23). The district court here flouted *Wynn*'s holding when it relied on a PSR to determine that Armes had been convicted of subsection (b)'s version of Kentucky third-degree rape, Ky. Rev. Stat. Ann. § 510.060(1)(b) (West 2005).

The second requirement, the "elemental-facts-only restriction," is a distinct limitation. *Hennessee*, 932 F.3d at 442–44. This restriction provides that when a court reviews a *Shepard-Taylor* source, the court may only look to "the elements, rather than the facts, of [the defendant's prior] crime." *Descamps*, 570 U.S. at 263. Elements are "what the jury must find beyond a

reasonable doubt to convict the defendant" at trial or "what the defendant necessarily admits when he pleads guilty." *Mathis*, 136 S. Ct. at 2248. The elemental-facts-only restriction is necessary because *Shepard-Taylor* documents often contain non-elemental facts. Relying on non-elemental facts—which were never found by a jury or admitted to in a plea—would undermine the purpose of the categorical approach and run afoul of the Sixth Amendment. *See Descamps*, 570 U.S. at 266–67, 269–70.

The majority here focuses on the second limitation, seeming to imply that because the district court focused on elemental facts (thereby abiding by the second restriction), we can ignore the district court's violation of the *Shepard-Taylor* source limitation. Such reasoning flouts our binding precedent, as both restrictions apply when a sentencing court uses the modified categorical approach to make a predicate offense determination under the statutory sentencing enhancements at issue here. *See, e.g.*, *United States v. Davis*, 751 F.3d 769, 774–76 (6th Cir. 2014) (describing that courts are restricted to *"Shepard*-approved documents" to conduct an elements-only inquiry when determining the applicability of the statutory sentencing enhancement under 18 U.S.C. § 2252A(b)(2)); *see also Descamps*, 570 U.S. at 263 (explaining that sentencing courts are only permitted to "review[] the . . . materials approved in" *Shepard* and *Taylor* to "discover which statutory phrase, contained within a statute listing several different crimes, covered a prior conviction") (internal citation and quotation marks omitted); *Mathis*, 136 S. Ct. at 2249 ("Under [the modified categorical] approach, a sentencing court looks to a limited class of [*Shepard-Taylor*] documents . . . to determine what crime, with what elements, a defendant was convicted of.").

The majority can only evade *Wynn* by misconstruing it. The majority's analysis suggests that upon close examination of *Wynn*, one could discern that both restrictions had been disregarded by the district court; that is, both the *Shepard-Taylor* source limitation and the elemental-facts-only requirement had been violated when the district court relied on a PSR to discover non-elemental facts. (*See* Maj. Op. 6 (pointing out that the PSR in *Wynn* described the "specific circumstances of the offense").) Thus, the *Wynn* court could have—hypothetically—reversed the defendant's sentence on the basis of either violation. But the *Wynn* court chose to reverse based on the *Shepard-Taylor* source violation, vacating the defendant's sentence because

"there [was] no *Shepard*-approved document in the record that [could] be used to determine . . . [the defendant's] specific conviction." *Wynn*, 579 F.3d at 577. *Wynn* held that a PSR is not a document approved by *Shepard* and *Taylor*, and thus it is not a source upon which a court may rely under the modified categorical approach. *See id.* at 575–77. We are compelled to abide by this holding.

The majority's reasons for dodging *Wynn*'s holding are unpersuasive. *Wynn* relied in part on *United States v. Bartee*, 529 F.3d 357 (6th Cir. 2008), explaining that "a necessary precursor to the panel's decision to vacate the defendant's sentence in *Bartee* was its determination that a PSR is not a *Shepard* document." *Wynn*, 579 F.3d at 577. The majority now indicates that this was not an accurate characterization of *Bartee*'s holding. The truth of this assertion is immaterial, as *Wynn* did not simply rely on *Bartee*. *Wynn* held that the Supreme Court's decisions in *Shepard* and *Taylor* mandated its holding because *Shepard* and *Taylor* restrict a court's review to documents of a "convicting court," and a PSR prepared for a federal sentencing "can never be a record of a convicting state court." *Wynn*, 579 F.3d at 576–77 (quoting *Shepard*, 544 U.S. at 23).

The majority also indicates that *United States v. Hockenberry*, 730 F.3d 645 (6th Cir. 2013), may have ignored *Wynn*'s directive that *Shepard* and *Taylor* prohibit relying on a PSR when using the modified categorical approach. This is similarly unpersuasive, as a subsequent panel cannot overturn the holding of a prior panel. *See, e.g.*, *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Alleging this was done in *Hockenberry* provides no basis for us to make that mistake as well.

I cannot join in the majority's attempt to "retire[]" *Wynn*, which provides a sensible, long-standing rule of this circuit. (*See* Maj. Op. 10–11.) *Wynn*'s rule derives from a plain reading of *Taylor* and *Shepard*. *See Wynn*, 579 F.3d at 576–77. Moreover, a key concern animating the *Shepard-Taylor* source limitation is ensuring that the sentencing court, in conducting factfinding related to a defendant's prior conviction, relies on "conclusive records" from the convicting court. *Shepard*, 544 U.S. at 21; *see also id.* at 23 (explaining that the sentencing court's review must be "confined to records of the convicting court approaching the certainty of the record of conviction"); *Mathis*, 136 S. Ct. at 2257 (describing "*Taylor*'s demand

for certainty"). A summary of an indictment prepared by a probation officer and written in a PSR is less conclusive, and provides a lesser degree of certainty, than if the sentencing court were required to review the actual indictment itself. *Wynn*'s requirement that the sentencing court rely only on actual *Shepard-Taylor* documents, rather than a PSR, is a prudent one given the importance of the sentencing court's factfinding in this context. And *Wynn*'s rule, as a practical matter, is an easy one by which to abide. If a *Shepard-Taylor* source, such as the state-court indictment, has already been located in order to be summarized in the PSR, the prosecutor should have ready access to the document to present it to the sentencing court.

I am also unable to join the majority in its alternative holding, but for different reasons. The majority explains that, in the alternative, every iteration of Kentucky third-degree rape qualifies as a predicate offense under the relevant statutory sentencing provisions, 18 U.S.C. §§ 2251(e), 2252A(b)(1)–(2), and thus we can uphold Armes's sentence even if the district court erred in relying on the PSR to identify the version of Kentucky third-degree rape under which Armes was convicted.

But there's a problem: The government forfeited this argument. The government did not raise this argument in its sentencing memorandum to the district court, at the district court's sentencing hearing, or in its appellate brief. Indeed, the government's briefs (to the district court and this court) do not even acknowledge what these other iterations of Kentucky third-degree rape are. That is because, at every stage, the government has advocated for the court to rely on the PSR to determine that Armes was convicted under § 510.060(1)(b) and failed to provide any discussion of the other versions of Kentucky third-degree rape, Ky. Rev. Stat. Ann. §§ 510.060(1)(a), (c).

We should refuse to consider an argument that the government has forfeited. *See, e.g.*, *Davis*, 751 F.3d at 777 (refusing to consider the government's new argument on appeal for upholding a district court's predicate offense determination under the statutory sentencing enhancement at 18 U.S.C. § 2252A(b)(2) "because the government waived it below by failing to make it in the district court."). As our court has previously explained:

> The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research. Instead, we rely on the parties to

frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. Only in exceptional cases . . . or when the rule would produce a plain miscarriage of justice do we exercise our discretion to entertain arguments not raised before the district court.

*Koprowski v. Baker*, 822 F.3d 248, 258–59 (6th Cir. 2016) (internal citations and quotation marks omitted). No such exceptional circumstance exists here. Not only do we lack the benefit of the district court's consideration of this question, we lack the benefit of full briefing on this issue in this appeal.

The imprudence of the majority's action is even more pronounced given that the question appears to be one of first impression. The majority does not cite to a prior case addressing whether Kentucky third-degree rape is a predicate offense under the relevant sentencing statutes, 18 U.S.C. §§ 2251(e), 2252A(b)(1)–(2). Instead, the majority itself admits that in determining whether § 510.060(1)(c), which governs sexual relations in a foster home with a person under 18-years-old, qualifies as a predicate offense, it relies on language from a Supreme Court case, *Esquivel-Quintana*, that is plainly not "a holding." (Maj. Op. 12 (citing *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1572 (2017).) In *Esquivel-Quintana*, the Supreme Court left open the possibility that "sexual abuse of a minor" under the Immigration and Nationality Act "could encompass[] sexual intercourse involving victims over the age of 16 that is abusive because of the nature of the relationship between the participants," but expressly declined to rule on that question, "leav[ing]" it "for another day." 137 S. Ct. at 1572. The majority now relies on *Esquivel-Quintana*—where the issue relevant to this appeal was left open—to make a pronouncement regarding unrelated statutory sentencing provisions.

Prudence and fairness demand that we leave it to a future panel to decide whether every iteration of Kentucky third-degree rape categorically qualifies as "sexual abuse" within the meaning of these sentencing statutes. Waiting to decide this question until it has been properly raised would "promote respect . . . for the Court's adjudicatory process" and avoid the "tempt[ation] to engage in ill-considered" decision-making. *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110–11 (2001) (internal citation and quotation marks omitted).

I respectfully dissent.