NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0250n.06

Case No. 24-5402

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="11">

**FILED**
May 16, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

O P I N I O N
</td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>DEONDRAE KEY,</td><td>)</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td></tr>
</table>

Before: BOGGS, LARSEN, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Deondrae Key pleaded guilty and was sentenced to a term of 87 months' imprisonment for being a felon in possession of a firearm. He contends that his 87-month prison term resulted from the district court's miscalculation of the Sentencing Guidelines and failure to adequately consider mitigating factors and explain its reasoning for the chosen sentence. Key now challenges the procedural and substantive reasonableness of his sentence. For the reasons given below, we AFFIRM.

## I. FACTUAL BACKGROUND

On November 2, 2020, Nashville, Tennessee, police officers, assisted by the United States Marshals Service, arrested Key on numerous outstanding state warrants. During the arrest, officers discovered that Key possessed a .40 caliber Smith and Wesson SD40 VE handgun, which he admitted belonged to him. Key also advised the officers that he had a prior felony conviction and

could not possess a handgun. A federal grand jury subsequently indicted him for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He pleaded guilty. And the court held a sentencing hearing in April 2024.

Prior to sentencing, the court and the parties received a Presentence Report ("PSR") prepared by the probation department, which included information about Key's background and history, offense conduct, United States Sentencing Guidelines ("U.S.S.G.") calculations, and potential grounds, if any, for departure or variance. The PSR included a determination that Key's two prior state convictions for aggravated assault under Tenn. Code Ann. § 39-13-102 were crimes of violence under the Guidelines. This determination led to an enhanced base offense level of 24. After subtracting three levels for acceptance of responsibility, Key's total offense level was 21. And Key's 13 criminal history points placed him in a Criminal History Category of VI. Together, these calculations resulted in an advisory Guidelines range of 77 to 96 months' imprisonment.[1]

At sentencing, neither Key nor the government objected to any aspect of the PSR. So the district court accepted the PSR's facts as true and expressly relied on them for sentencing purposes. The district court also accepted, as accurately calculated, the PSR's Guidelines range. But at Key's request, the court departed downward from criminal history category VI to category V, in accordance with Guidelines application notes which provide grounds for departing downward when a defendant has received points for possession of marijuana for personal use with no intent to sell. *See* U.S.S.G. § 4A1.3, n. 3(A)(ii). This change in criminal history category produced a new Guidelines range of 70 to 87 months' imprisonment.

---

[1] In Part D covering sentencing options, the PSR states that the guidelines range should be 76 to 96 months. But this appears to be a typographical error. The sentencing transcript provides that the appropriate range is 77 to 96 months, each party suggests this is also the appropriate range, and other sections of the PSR outside of Part D also identify a Guidelines range of 77 to 96 months.

Both sides argued for variances from this newly determined range. Key requested a downward variance to 60 months to run concurrently with any state court sentence later imposed. The government, on the other hand, moved for an upward variance to return Key's Guidelines range to 77 to 96 months' imprisonment based on Key's "history of violent criminal activity." (Sent. Tr., R. 51, PageID 139).

After considering the § 3553(a) factors, the district court sentenced Key to 87 months' imprisonment followed by three years of supervised release. The district court acknowledged that the sentence was on the "upper end" of the Guidelines range but pointed to Key's significant criminal history to explain the upper-end sentence. (*Id.* at 159). The district court rejected the government's argument for a 96-month sentence because it was "a bit too much . . . given [Key's] mental health challenges and . . . difficult childhood. (*Id.*). It also declined Key's request for a downward variance, concluding it was "insufficient due to deterrence, protecting the public, and [his] criminal history." (*Id.*).

Before adjourning the sentencing hearing, and pursuant to *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004), the district court asked whether either party had any objections to the sentence pronounced that had not been already raised in the record. The government had none, and Key objected only to the district court's denial of his request to receive credit for time served. Key timely appealed.

## II. ANALYSIS

*Standard of Review.* On appeal, Key challenges the procedural and substantive reasonableness of his sentence, both of which are required for a valid sentence. *United States v. Gardner*, 32 F.4th 504, 529 (6th Cir. 2022). We review Key's procedural-reasonableness challenges for plain error because he never objected to the district court's sentencing calculations

until this appeal. *Bostic*, 371 F.3d at 872. Under plain-error review, it is Key's burden to show that the district court made (1) an error, (2) that was clear or obvious, and (3) affected his substantial rights. *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020). If Key meets this burden, we may reverse the error if it affected the "fairness, integrity or public reputation of [the] judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). We review substantive-reasonableness challenges for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).

## A. Procedural Reasonableness

Procedural reasonableness requires the district court to "properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence—including an explanation for any variance from the guidelines range." *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (quoting *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008)). With respect to the proper calculation of the Guidelines, "the [district] court must begin at the proper base-offense level, apply any applicable enhancements or reductions to arrive at the adjusted-offense level, and use the resulting offense level with the appropriate criminal-history category to arrive at a sentencing range." *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009) (quoting *United States v. Thompson*, 515 F.3d 556, 561 (6th Cir. 2008)).

Key argues that the district court (1) incorrectly calculated his Guidelines sentencing range; (2) wrongly granted the government's request for an upward variance without providing its reasoning for doing so; and, relatedly, (3) failed to adequately explain the rationale for his sentence.

1.  Calculation of Key's Guidelines range.

Under the Guidelines, a defendant convicted of a firearm offense is assigned an enhanced base offense level of twenty-four (24) if he has sustained at least two prior felony convictions for a crime of violence. U.S.S.G. § 2K2.1(a)(2). Key argues that the sentencing court incorrectly applied this higher offense level to him because it considered aggravated assault under Tenn. Code Ann. § 39-13-102 to be a crime of violence.

Relevant here, the Guidelines define "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that [] has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Courts use the categorical approach to determine whether a given state law offense meets this definition—i.e., whether the state law criminalizes more conduct than is criminalized by federal law. *See United States v. Burris*, 912 F.3d 386, 391 (6th Cir. 2019) (en banc). In carrying out this approach, "we identify the conduct that was criminalized under the state law of conviction; then, we evaluate that relevant conduct as defined in the Guidelines; and finally, we 'overlay the two.'" *United States v. Clark*, 46 F.4th 404, 408 (6th Cir. 2022) (quoting *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020)).

When the relevant state statute is "divisible," meaning it "comprises multiple, alternative versions of the crime," we employ the modified categorical approach to determine whether a prior conviction is a crime of violence for sentencing purposes. *Descamps v. United States*, 570 U.S. 254, 257, 262 (2013). As part of this approach, courts may use *Shepard* documents—so named for the Supreme Court's decision in *Shepard v. United States*, 544 U.S. 13 (2005)—to figure out which set of statutory elements "formed the basis of the defendant's prior conviction" to determine whether the conviction is categorically a crime of violence. *Descamps*, 570 U.S. at 262. *Shepard*

documents include "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, [and] comparable judicial record[s] of this information." *Shepard*, 544 U.S. at 26. Importantly, we have previously observed that courts cannot rely on the "underlying facts of an offense contained in" a PSR to determine eligibility for a sentence enhancement. *United States v. Armes*, 953 F.3d 875, 884 (6th Cir. 2020); *see also id.* (distinguishing *United States v. Ferguson*, 681 F.3d 826, 832 (6th Cir. 2012) and similar cases).

*Plain Error.* Key admits that it is possible that his convictions may be crimes of violence, but he faults the district court for reaching that conclusion without reviewing state-court documents that might supply the appropriate information to reach a firm conclusion. To show that the district court erred, he must demonstrate "some sort of 'deviation from a legal rule.'" *Puckett*, 556 U.S. at 135 (citation omitted). And to establish that the error was clear, he must show that it is not "subject to reasonable dispute." *Id.*

First, as regards Key's prior state convictions, we note that Tennessee's aggravated assault statute is divisible. *United States v. Cooper*, 739 F.3d 873, 880 n.2 (6th Cir. 2014). So the district court was free to consider "*Shepard* documents to determine . . . which subsection of § 39-13-102 [Key] was convicted of violating." *Id.* at 880–81. But, as the government concedes, the district court did not have the appropriate *Shepard* documents to make its determination. So, the district court apparently relied only on the PSR and the parties' lack of objections to the PSR's Guidelines calculation to arrive at Key's base offense level of 24. But the PSR here does not identify with any specificity the documents on which it based its conclusion that Key's prior convictions are crimes of violence. Therefore, it is in turn, difficult to conclude that the district court relied on appropriate materials.

Pointing to out-of-circuit cases, the government argues that the parties effectively stipulated to the proper characterization of Key's prior convictions through their mutual acceptance of the accuracy of the PSR. And the district court therefore had no obligation to look beyond this so-called "stipulation." (ECF 29, Appellee's Br. at 26 (citing *United States v. Aviles-Solarzano*, 623 F.3d 470, 475 (7th Cir. 2010))). But we have not gone quite that far in our own jurisprudence; we have held that district courts may rely on a PSR's undisputed factual conclusions. *See United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003) ("We can find no reason to require a district court to make independent findings outside the PSR when the facts are undisputed."); *United States v. Pearson*, 430 F. App'x 431, 435 (6th Cir. 2011). And "courts may determine the elements of a prior conviction based on a presentence report's undisputed characterization of relevant *Shepard* material. *Armes*, 953 F.3d at 884. In that regard, *Armes* held that the district court "may use a presentence report only when: (1) the relevant part of the report is undisputed; (2) it characterizes an underlying state-court record; and (3) that underlying record is itself acceptable *Shepard* material." *Id.* The district court in *Armes* relied on a PSR's discussion of the elements that was explicitly based on the state-court indictment. *Id.* at 879, 85. So, the reviewing court had sufficient information to ascertain that the PSR relied on appropriate *Shepard* material.

That is not clearly the case here. Key's PSR merely identifies the source information about his prior aggravated-assault convictions as "court records." (PSR, R. 49, PageID 109–11 ¶¶ 34, 37). This generic reference to court records, without identification of the underlying source, does not make it apparent that the PSR relied on "acceptable *Shepard* material." *Armes*, 953 F.3d at 884. So, we do not have the benefit, here, that the court in *Armes* had in ascertaining whether the PSR relied on appropriate *Shepard* material. Because we are reviewing for plain error, however,

it is Key's job to show that the district court clearly or obviously erred. But we need not determine whether there is a reasonable dispute of error because regardless of whether any such error occurred, it did not affect Key's substantial rights and therefore does not warrant remand.

*Substantial Rights.* Even if the lower court somehow erred by not relying on the appropriate *Shepard* documents, we can judicially notice those documents to determine whether the sentencing court's resulting Guidelines calculation affected Key's substantial rights. Indeed, even using a PSR's characterization of the facts underlying an offense "to determine the defendant's eligibility for a sentence enhancement does not affect his substantial rights if such a determination has independent support in sources approved by *Shepard*." *Ferguson*, 681 F.3d at 833. And we may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* at 834 (citing Fed. R. Evid. 201(b), (f)). Moreover, "[j]udicial records are a source of 'reasonably indisputable accuracy' when they record some judicial action such as dismissing an action, granting a motion, or finding a fact." *Id.* (citation omitted).[2]

Key previously pleaded guilty in two separate Tennessee cases to aggravated assault. Tennessee's aggravated-assault statute provides that "[a] person commits aggravated assault" when he "intentionally or knowingly commits an assault as defined in § 39-13-101, and the assault . . . involved strangulation." Tenn. Code Ann. § 39-13-102(a)(1)(A)(iv). The statute defines strangulation as "intentionally or knowingly impeding normal breathing or circulation of the blood by applying pressure to the throat or neck or by blocking the nose and mouth of another person . . . ." Tenn. Code Ann. § 39-13-102(a)(2). So, aggravated assault by strangulation categorically

---

[2] We have separately granted the government's motion for this court to take judicial notice of several state-court documents relating to Key's Tennessee aggravated-assault convictions.

qualifies as a "crime of violence" because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1); *see also United States v. Batey*, 2023 WL 2401193, at \*4 (6th Cir. Mar. 8, 2023) (concluding that Tennessee aggravated assault by strangulation qualifies as a crime of violence).

Here, the *Shepard* documents relating to Key's convictions validate the government's contention that both were for aggravated assault by strangulation. To begin, Key's charging documents and criminal judgments in Davidson County Criminal Court, Docket Nos. 2016-C-1687 and 2017-C-1789, provide important details that lead us to conclude "that [Key's] substantial rights were not violated." *Ferguson*, 681 F.3d at 833; (Indictment and Criminal Judgment, Case No. 2016-C-1687, ECF 24, Addendum #1; Indictment and Criminal Judgment, Case No. 2017-C-1789, ECF 24, Addendum #2). First, the indictments for each case demonstrate that both of Key's aggravated assault charges were for "intentionally or knowingly" causing bodily injury by strangling or attempting to strangle another person, in violation of § 39-13-102(a)(1)(A)(iv). (*Id.*)**.** And the entry of judgment form in Docket No. 2016-C-1687 lists Key's offense of conviction as "§ 39-13-102 Agg. Assault–Strangulation." (ECF 24 Addendum #1 at 2). Likewise, Count 1 of the indictment in Docket No. 2017-C-1789 provides that the grand jury indicted Key for aggravated assault that "involved strangulation or attempted strangulation." (ECF 24 Addendum #2 at 4). And the entry of judgment for that case shows that Key pleaded guilty to the aggravated-assault charge. (*Id.* at 2).

From these documents, we see that Key was indeed convicted of aggravated assault by strangulation, not some other offense covered by § 39-13-102(a)(2). As earlier noted, Key does not dispute that aggravated assault by strangulation so qualifies. Given this evidence, the district court's assignment of an enhanced base offense level of 24 was accurate and did not disturb the

procedural reasonableness of Key's sentence or otherwise affect his substantial rights. Key's challenge on this basis therefore fails plain-error review.

    2.  <u>The district court's disposition on the government's upward variance request.</u>

Key next contends that the district court improperly, and without explanation, granted the government's request for an upward variance. Again, sentencing courts are to "adequately explain the chosen sentence—including an explanation for any variance from the guidelines range." *Presley*, 547 F.3d at 629. Here, the district court considered the parties' variance requests in weighing the § 3553(a) factors.

As an initial matter, the record does not support Key's assertion that the district court granted the government's motion for an upward variance. Instead, it shows the district court expressly declared, after granting a one-level downward departure in Key's criminal-history category, that Key's advisory Guidelines range was 70 to 87 months' imprisonment. Later in the proceedings, the court addressed the fact that "the government [sought] an upward variance . . . of 96 months" and that Key sought a downward variance of "60 months." (Sent. Tr., R. 51, PageID 156). The court rejected both requests. And in issuing its sentence, the court acknowledged that the sentence was on the "upper end" of the Guidelines range, explaining that such a sentence was appropriate "based on [Key's] criminal history." (*Id.* at 159).

The court noted that the sentence was also in the "mid-range for the original guideline range," and refused to impose a 96-month sentence—the upward variance the government sought—because it was "too much." (*Id.* at 158–59). It then declined Key's requested downward variance out of concern for the need to deter further criminal activity and any danger he might pose to the public. Because the court correctly identified Key's Guidelines range of 77 to 96

months, departed downward to a range of 70 to 87 months, and then imposed a within-guidelines sentence, we find no error.

   3.   <u>The district court provided adequate reasoning for the sentence.</u>

In his third and final procedural-reasonableness claim, Key asserts—perhaps as a corollary to his variance argument—that the district court failed to "adequately explain the methodology it followed in imposing [his] sentence." (ECF 19, Appellant Br. at 23).  According to Key, we cannot meaningfully review his sentence because of this purported deficiency.  Seeing no deficiency, we disagree.

In determining whether a district court adequately explained the chosen sentence in a way that allows for meaningful appellate review, we note that the district court need only to have "listened to each argument, considered the supporting evidence, [been] fully aware of the defendant's circumstances and t[aken] them into account in sentencing him." *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc) (citation and internal quotes omitted).

The record shows that the district court considered both parties' arguments on sentencing, adopted the PSR findings, weighed the appropriate § 3553(a) factors, and provided a "reasoned basis" for imposing a within-Guidelines-range-sentence. *Rita v. United States*, 551 U.S. 338, 356 (2007).  The court indicated that it operated within the 70-to-87 months Guidelines range and explained that its "upper-end" sentence was necessary to serve the ends of deterrence and to protect the public in light of Key's criminal history.  The court considered: (1) the "very concerning" nature and circumstances of Key's possession of a firearm "after multiple violent convictions"; (2) Key's "long criminal history" of "repeated violent acts," particularly against women; (3) mitigating factors such as Key's childhood challenges and mental-health history; (4) Key's need to be deterred weighing in favor or a lengthy sentence; (5) sentencing disparities; and (6) the

need for the sentence to reflect the seriousness of the offense, to punish the offense, and promote respect for the law. (Sent. Tr., R. 51, PageID 156–58).

Regarding Key's mitigating factors, the court expressed appreciation that Key wanted to take advantage of programming to address his mental-health challenges and encouraged him to do so. But, in the end, the court could not ignore Key's violent criminal history. Because the court explained how it chose the appropriate Guidelines range and why it imposed a sentence at the upper end of that range, it committed no error.

### B. Substantive Reasonableness

Key next argues that his sentence is substantively unreasonable because the sentencing court both "fail[ed] to consider relevant sentencing factors" and gave "an unreasonable amount of weight to" his criminal history. (ECF 19, Appellant Br. at 24 (quoting *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010)). Again, we review for abuse of discretion. *Gall*, 552 U.S. at 40–41.

"The substantive reasonableness inquiry determines if the length of a sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Small*, 988 F.3d 241, 258 (6th Cir. 2021). In other words, Key's appeal requires that we determine whether his sentence is too long. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). When a "sentence is within the Guidelines range," we may presume the sentence's reasonableness. *Gall*, 552 U.S. at 51. But even with presumptive reasonableness, we must inquire as to whether the district court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Rayyan*, 885 F.3d at 442.

The district court did not abuse its discretion here. The 87-month sentence is within the Guidelines range, so we may presume it is substantively reasonable. *Gall*, 552 U.S. at 51. Beyond

that presumption, we observe that the sentencing court considered each § 3553(a) factor, including several references to Key's troubled childhood and mental-health struggles. And the court considered those references independently, rather than tying them back to Key's criminal record as Key contends. In any event, a defendant's criminal record can bear on each of the § 3553(a) factors. And despite the mitigating factors, the court reasoned that Key's violent criminal past, the seriousness of his current offense, and the need to deter Key from continuing to break the law weighed "in favor of a lengthy sentence." (Sent. Tr., R. 51, PageID 157). The record contradicts Key's assertions that "the only factor the court evaluated in determining [his] sentence was his criminal history." (ECF 19, Appellant Br. at 25). So we conclude that Key's sentence is substantively reasonable.[3]

## 4.  CONCLUSION

For the foregoing reasons, we **AFFIRM**.

---

[3] We also note that Key's reliance on *United States v. Lee* to suggest that the district court gave improper weight to Key's criminal history is unpersuasive. 974 F.3d 670 (6th Cir. 2020). In *Lee*, the district court's upward variance nearly doubled the defendant's 30-to-37-month sentence to a 60-month term of imprisonment. *Id.* at 677. Even with such a large variance, the court noted that it is sometimes appropriate for a district court to "double count" criminal history during sentencing. *Id.* Nothing in *Lee* advises against the district court's within-Guidelines sentence here.